**In the Matter of J.E.H.**

**No. 09–97–117 CV.**

Court of Appeals of Texas, Beaumont.

Submitted June 18, 1998.

Decided Aug. 27, 1998.

Rehearing Overruled Sept. 24, 1998.

Mary Ann Turner, Turner & Turner, Conroe, for appellant.

Frank H. Bass, Jr., County Atty., Lynette Aguilar, Asst. County Atty., Conroe, for state.

Before BURGESS, STOVER and HILL,[1] JJ.

**OPINION**

JOHN HILL, Justice (Assigned).

J.E.H., while a juvenile, was adjudicated as delinquent upon his plea that he was guilty of the capital murder of his parents. The trial court assessed a determinate sentence of twenty-five years, to be served initially in the custody of the Texas Youth Commission. Inasmuch as the punishment assessed extended

---

1. The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

beyond J.E.H.'s eighteenth birthday, the Texas Youth Commission sent notice that J.E.H. was subject to transfer to the Texas Department of Criminal Justice, Institutional Division, upon his eighteenth birthday. The Commission requested that a release hearing be set prior to that time as required by § 54.11 of the Texas Family Code. J.E.H. appeals from the trial court's order that he be transferred to the Texas Department of Criminal Justice, Institutional Division. He presents three points of error, contending that (1) the trial court committed reversible error when it denied his motion for leave to file for expert assistance of a psychiatrist ex parte, thereby denying him his due process right to fundamental fairness as guaranteed to him by the Fourteenth Amendment of the Constitution of the United States; (2) the trial court erred by denying his motion to provide funds for expert assistance from a psychiatrist; and (3) the trial court erred by failing to appoint a guardian ad litem as required by § 51.11 of the Texas Family Code.

We reverse the order of transfer and remand for a new release-transfer hearing because J.E.H. was entitled to the appointment of a defense psychological or psychiatric expert for the purpose of the release-transfer hearing.

J.E.H. contends in point of error number two that the trial court erred by denying his motion to provide funds for expert assistance from a psychiatrist. The United States Supreme Court, in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), held that when an indigent defendant's sanity at the time of his or her offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. See *id.* 470 U.S. at 83, 105 S.Ct. 1087. The Court further held that the defendant would have the same right in capital murder cases when the State presents psychiatric evidence of the defendant's future dangerousness. See id. The Court based its decision on Ake being denied his rights under the Due Process Clause of the United

States Constitution. See *id.* 470 U.S. at 87, 105 S.Ct. 1087. In *Ake*, the Court, in holding that a defendant is entitled to his or her own expert, not an independent expert, said, "... justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." See *id.* 470 U.S. at 76, 105 S.Ct. 1087.

The Texas Court of Criminal Appeals has applied *Ake* in requiring the appointment of a defense expert in non-capital trials where sanity is at issue. See *De Freece v. State*, 848 S.W.2d 150, 160 (Tex.Crim.App.1993). The defendant must show a need for the expert and that the subject of the analysis will be a significant factor in the trial. See *Rey v. State*, 897 S.W.2d 333, 339 (Tex.Crim. App.1995); *Rodriguez v. State*, 906 S.W.2d 70, 75 (Tex.App.—San Antonio 1995), pet. dism'd, improvidently granted, 924 S.W.2d 156 (Tex.Crim.App.1996).

■ We conclude, based upon these authorities, that in criminal proceedings, at either the guilt/innocence or punishment phase of a trial, the Due Process Clause of the United States Constitution requires that an indigent defendant is entitled to the appointment of a defense expert, assuming that the proper showing is made of the defendant's need and the fact that the issue concerning which the expert is requested is to be a significant factor in the trial.

■ A child under our juvenile justice system is afforded the basic constitutional protections of an adult. See *In the Matter of D.S.*, 921 S.W.2d 383, 386 (Tex.App.—Corpus Christi 1996, writ dism'd w.o.j.). We therefore hold that the rule in *Ake* is applicable in juvenile proceedings just as it is in adult criminal trials.

Section 54.03 of the Texas Family Code provides for an adjudication hearing at which it will be determined whether or not a child has engaged in delinquent conduct or conduct indicating a need for supervision. See Tex. Fam.Code Ann. § 54.03(f) (Vernon 1996). This proceeding is roughly equivalent to the guilt/innocence phase of a criminal trial. Section 54.04 of the Texas Family

Code provides that there is to be a disposition hearing subsequent to the adjudication hearing. Tex. Fam.Code Ann. § 54.04 (Vernon 1996 & Supp.1998). This hearing is roughly equivalent to the punishment phase of a criminal trial, except that, in the case of a determinate sentence, the entity to which the juvenile is committed to serve the full sentence has not yet been determined.

■ Section 54.11 of the Texas Family Code provides for what it terms a release or transfer hearing. Act of June 17, 1987, 70th Leg., R.S., ch. 385, 1987 Tex. Gen. Laws 1896 (amended 1991, 1995) (current version at Tex. Fam.Code Ann. § 54.11 (Vernon 1996)). The statute provides that the court, at that hearing, may consider written reports from probation officers, professional court employees, or professional consultants, in addition to the testimony of witnesses. Id. (current version at Tex. Fam.Code Ann. § 54.11(d) (Vernon 1996)). The person to be transferred or released under supervision is entitled to an attorney, to examine all witnesses against him, to present evidence and oral argument, and to previous examination of all reports on and evaluations and examinations of or relating to him that may be used in the proceeding. Id. (current version at Tex. Fam.Code Ann. § 54.11(e) (Vernon 1996)).

The version of § 54.11(i) of the Texas Family Code applicable at the time of J.E.H.'s offense provided at the conclusion of the hearing, the trial court may (1) order the recommitment of the person to the Texas Youth Commission without a determinate sentence, (2) order the person be transferred to the custody of the Texas Department of Criminal Justice, Institutional Division, for the completion of the determinate sentence, or (3) order the final discharge of the person. Act of June 15, 1991, 72nd Leg., R.S., ch. 574, § 3, 1991 Tex. Gen. Laws 2053 (amended 1995) (current version at Tex. Fam.Code Ann. §§ 54.11(i), (j) (Vernon 1996)). In making that determination, the court may consider the experiences and character of the person before and after commitment to the youth commission, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the youth commission and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided. Act of June 17, 1987, 70th Leg., R.S., ch. 385, 1987 Tex. Gen. Laws 1896 (amended 1995) (current version at Tex. Fam.Code Ann. § 54.11(k) (Vernon 1996)).

At a hearing on J.E.H.'s request for expert assistance, the State indicated that it planned to offer evidence at the release-transfer hearing from medical experts. The State also conceded that medical evidence would be relevant. J.E.H. presented an affidavit from a psychologist who indicated that expert opinion evidence would be critical to a determination of J.E.H.'s ability to contribute to society, the risk of future dangerousness, the success of treatment to date, whether J.E.H. is amenable to future treatment, the risk to reoffend, and the best interests of "the persons including Respondent child." We hold that J.E.H. made a sufficient showing to require the appointment of a defense expert if the appointment of such an expert is required for such a hearing by the Due Process Clause of the United States Constitution.

Because of the hearing's impact upon a juvenile with respect to his or her punishment and the overall unfairness of the State's presentation of expert testimony when an indigent juvenile would not have the means to counter such evidence in the absence of the appointment of his or her own expert, we hold that the appointment of such an expert in connection with a release-transfer hearing is required by the Due Process Clause when an indigent juvenile makes the required showing to justify such an appointment. As was noted in *Ake*, 470 U.S. at 83, 105 S.Ct. 1087 , an indigent does not have a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. In this case, while J.E.H.'s motion was styled "Motion To Provide Funds for Expert Assistance from a Psychiatrist," an examination of the motion shows that it was also a request for such expert assistance from the court, not just a request for funds to hire one's own expert.

The State contends that J.E.H. is not entitled to the assistance of an expert in his behalf at the release-transfer hearing because it is not a part of the guilt/innocence phase of the trial, nor is it part of the punishment stage of the trial. Rather, it says, it is more akin to a "parole-type" hearing. The United States Supreme Court has held that because the revocation of parole is not part of a criminal prosecution, the "full panoply of rights" due a defendant in such a proceeding does not apply to a parole revocation. *See Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It would seem important, then, in determining what due process requires in a release-transfer hearing, to ascertain if it is part of what would be the punishment stage of the trial of an adult or whether it is more akin to a "parole-type proceeding."

One court has held in dicta that a hearing such as that in this case does not involve issues of guilt or innocence nor a determination or imposition of punishment. *See In the Matter of C.L., Jr.,* 874 S.W.2d 880, 884–85 (Tex.App.—Austin 1994, no writ). Another court has held that the division of where an individual spends his assessed term of years between the Texas Youth Commission and the Texas Department of Criminal Justice, Institutional Division, does not subject a juvenile to double punishment and that an order of transfer does not constitute an additional punishment. *See In the Matter of J.G.,* 905 S.W.2d 676, 682 (Tex.App.—Texarkana 1995), *writ denied,* 916 S.W.2d 949 (Tex.1995). Still another court has stated that the juvenile has already been sentenced to a specific term and that the purpose of the hearing is merely a second chance to persuade the court that he or she should not be imprisoned. *See In the Matter of D.S.,* 921 S.W.2d at 387.

In holding that a revocation of parole is not part of a criminal prosecution so that the full array of rights due a defendant in a criminal proceeding do not apply, the United States Supreme Court noted three factors in support of its conclusion. These are: (1) parole arises after the end of the criminal prosecution, including imposition of sentence; (2) supervision is not directly by the court

but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive; and (3) revocation of parole deprives an individual only of the conditional liberty properly dependent upon observance of special parole restrictions, not the absolute liberty to which every citizen is entitled. *See Morrissey,* 408 U.S. at 480, 92 S.Ct. 2593.

It is true, as noted in the cases we have discussed, that the number of years the juvenile is to serve has already been determined prior to the release-transfer hearing. However, unlike in an adult criminal trial, the entity to which the juvenile is committed to serve his or her full sentence has not been determined prior to the release-transfer hearing. Evidence was presented at trial showing the difference between serving a sentence with the Texas Youth Commission and the Texas Department of Criminal Justice, Institutional Division. The differences included more intensive treatment programs available to J.E.H. in the Texas Youth Commission and the fact that the Texas Youth Commission would release him upon his twenty-first birthday. The determination made at the hearing is made by the court, not an administrative agency. Evidence at the hearing showed that while J.E.H. would be eligible for immediate release if he stayed with the Texas Youth Commission, it was unlikely that he would be released immediately or any time soon, but, as just related, he would be released no later than his twenty-first birthday. There was also evidence that J.E.H. would be eligible for parole from the Texas Department of Criminal Justice, Institutional Division, within one year and three months. The determination at the hearing did not immediately affect J.E.H.'s liberty, but would possibly affect it in the future.

Although J.E.H's sentence of twenty-five years had already been assessed prior to the release-transfer hearing, based upon our consideration of the factors deemed by the United States Supreme Court to be determinative in distinguishing between parts of the criminal trial process and a parole proceeding, we hold that a release-transfer hearing is sufficiently a part of the punishment-setting pro-

cess as to afford the same due process right to J.E.H. as set forth under *Ake.* We believe our holding to be consistent with those authorities that we have discussed. We sustain point of error number two.

J.E.H. urges in point of error number one that the trial court erred in denying his motion for leave to proceed ex parte to file for expert assistance of a psychiatrist. We agree. *See Williams v. State,* 958 S.W.2d 186, 191–94 (Tex.Crim.App.1997). The trial court's error is subject to a harmless-error analysis. *See id.* at 194. However, in view of our determination of point of error number two, we need not conduct such an analysis.

■ J.E.H. insists that the trial court erred by not appointing him a guardian ad litem as required by Tex. Fam.Code Ann. § 51.11(b) (Vernon 1996). That section requires such an appointment where a child appears before a juvenile court without a parent or guardian. J.E.H. acknowledges that the trial court appointed his attorney to also serve as his guardian ad litem. When the attorney addressed the potential for conflict in the two roles, the trial court asked the attorney to advise him should such a conflict arise. There is no indication that the attorney ever advised the trial court of any conflict. While it might be more appropriate, because of the possibility of conflict, to appoint someone other than the child's attorney as guardian ad litem, the statute specifically provides that the attorney for a child may also be the child's guardian ad litem. Tex. Fam.Code Ann. § 54.11(c) (Vernon 1996).

J.E.H. primarily relies upon the cases of *Flynn v. State,* 707 S.W.2d 87 (Tex.Crim. App.1986) and *In the Matter of A.G.G.,* 860 S.W.2d 160 (Tex.App.—Dallas 1993, no writ). We find both cases to be distinguishable because in neither case did the trial court appoint a guardian ad litem for the child, whereas in this case, as previously noted, the trial court appointed the child's attorney as guardian ad litem. We overrule point of error number three. Inasmuch as we have sustained point of error number two, we remand this cause for a new release-transfer hearing.

REVERSED AND REMANDED.