COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-270-CV
 
IN THE MATTER OF J.K.N.
 
------------
FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
Based upon a stipulation of
evidence demonstrating J.K.N.'s unauthorized use of a motor vehicle, the
juvenile court adjudicated Appellant J.K.N. delinquent and committed him to an
indeterminate sentence in the Texas Youth Commission (TYC). In three points,
J.K.N. complains that: the trial court erred by failing to order a psychiatric
examination to determine his fitness to proceed; the evidence is insufficient to
support the findings required for disposition and commitment to TYC; and the
judgment and order of commitment are fundamentally defective. We modify the
judgment and order of commitment to accurately reflect J.K.N.'s birth date and
the single offense for which he was adjudicated delinquent and, as modified,
affirm the juvenile court's judgment and order.
II. Background
Facts
On July 9, 2002, the State filed
its third amended petition alleging that J.K.N. had engaged in delinquent
conduct by (1) knowingly, and with the intent to deceive, making a false
statement to a law enforcement officer conducting a criminal investigation; (2)
intentionally or knowingly damaging or destroying the interior walls and
furniture of a residence by hitting, smashing, and/or kicking them; (3)
unlawfully appropriating a motor vehicle with intent to deprive the owner of the
property; and (4) operating a motor vehicle without the effective consent of the
owner. J.K.N. waived his right to a jury trial in writing and consented to the
stipulation of evidence and introduction of testimony by oral stipulation,
affidavits, written witness statements, and other documentary evidence.
A combined adjudication and
disposition hearing was conducted on July 18, 2002. At the outset, the State
waived the auto theft allegation set forth in paragraph three of its petition
and chose to proceed only on paragraphs one, two, and four. After setting forth
the evidence for stipulation on each of the three paragraphs, J.K.N. informed
his attorney that he wished to stipulate only to paragraph four, unauthorized
use of a motor vehicle. After conferring with J.K.N. and his attorney, the State
agreed to J.K.N.'s stipulation and dropped the allegations contained in
paragraphs one and two. The juvenile court adjudicated J.K.N. delinquent based
upon his stipulation to paragraph four--unauthorized use of a motor vehicle.
Moving immediately into a disposition hearing, the juvenile court heard evidence
and argument and ultimately committed J.K.N. to "the care, custody and
control of the Texas Youth Commission . . . for an indeterminate period of time
not to exceed the time when HE shall be 21 years of age or
until duly discharged . . . ."
III. Fitness to
Proceed
In his first point, J.K.N. contends
that the trial court erred by failing to sua sponte order a psychiatric
examination to determine his mental competence and fitness to proceed. We find
no error and overrule J.K.N.'s point.
The family code provides a
framework for determinations of mental illness and fitness to proceed within the
juvenile justice system. Section 55.31 provides in part that:

        
 (a) A child alleged by petition or found to have engaged in delinquent conduct
 or conduct indicating a need for supervision who as a result of mental illness
 or mental retardation lacks capacity to understand the proceedings in
 juvenile court or to assist in the child's own defense is unfit to
 proceed and shall not be subjected to discretionary transfer to criminal
 court, adjudication, disposition, or modification of disposition as long as
 such incapacity endures.
        
 (b) On a motion by a party, the juvenile court shall determine
 whether probable cause exists to believe that a child who is alleged by
 petition or who is found to have engaged in delinquent conduct or conduct
 indicating a need for supervision is unfit to proceed as a result of mental
 illness or mental retardation.

Tex. Fam. Code Ann. § 55.31(a)-(b)
(Vernon 2002) (emphasis added). If the court finds probable cause to believe
that the child is unfit to proceed, then the court shall temporarily stay the
juvenile proceedings and immediately order the child to be examined. Id.
J.K.N. concedes that the motion
contemplated by section 55.31 was never made in this case. And, although a
juvenile court has the power to order a physical or mental examination on its
own motion at any stage of juvenile proceedings, it is not statutorily required
to do so. Id. § 51.20; accord In re E.M.R., 55 S.W.3d 712,
719 (Tex. App.--Corpus Christi 2001, no pet.) (refusing to impose on trial court
duty of holding sua sponte hearing on child's fitness to proceed in absence of
statutory mandate). Consequently, here, the juvenile court was not statutorily
required to make any determination regarding J.K.N.'s fitness to proceed.
Nonetheless, J.K.N. argues that due
process considerations require the court to have a juvenile examined on its own
motion "where there is such blatant and extensive evidence of mental
illness raised."
Although a juvenile delinquency
trial is a civil proceeding, it is quasi-criminal in nature. Smith v. Rankin,
661 S.W.2d 152, 153 (Tex. App.--Houston [1st Dist.] 1983, orig.
proceeding). Accordingly, a child under our juvenile justice system is afforded
the basic constitutional protections of an adult. In re J.E.H., 972
S.W.2d 928, 929 (Tex. App.--Beaumont 1998, pet. denied); In re D.S.,
921 S.W.2d 383, 386 (Tex. App.--Corpus Christi 1996, writ dism'd w.o.j.). As the
court of criminal appeals recently explained in McDaniel v. State,

        
 In both Texas and the federal system, "[i]t has long been accepted that a
 person whose mental condition is such that he lacks the capacity to
 understand the nature and object of the proceedings against him, to consult
 with counsel, and to assist in preparing his defense may not be subjected
 to a trial." The conviction of an accused person while he is legally
 incompetent violates due process. Thus, to protect a criminal defendant's
 constitutional rights, a trial court must inquire into the accused's mental
 competence once the issue is sufficiently raised.

98 S.W.3d 704, 709-10 (Tex. Crim.
App. 2003) (emphasis added) (citations omitted).
Accordingly, we will examine the
record to see whether evidence exists that the trial court should have
reasonably concluded that, as a result of mental illness, J.K.N. lacked the
capacity to understand the proceedings, to consult with counsel, or to assist in
his own defense, so that the court's failure to order a psychiatric examination
violated J.K.N.'s due process rights. See In re K.A.H., 700 S.W.2d 782,
784 (Tex. App.--Fort Worth 1985, no writ).
For purposes of the juvenile
justice code, a "mental illness" is defined as "an illness,
disease, or condition, other than epilepsy, senility, alcoholism, or mental
deficiency" that "substantially impairs a person's thought, perception
of reality, emotional process, or judgment" or "grossly impairs
behavior as demonstrated by recent disturbed behavior." Tex. Health &
Safety Code Ann. § 571.003(14) (Vernon 2003); see also Tex. Fam. Code
Ann. § 55.01 (Vernon 2002).
An examination of the record does
reveal some evidence that J.K.N. suffers from "mental illness." It is
undisputed that J.K.N. was referred to and spent about a week at Millwood, a
facility that treats mental and psychiatric problems. Curtis Thompson, J.K.N.'s
probation officer, explained that J.K.N. was transferred from the juvenile
detention facility to Millwood for psychological evaluation due to
"suicidal ideations, report of hallucinations, as well as threatening
behavior to staff" while in detention. Thompson also indicated that J.K.N.
was on the MHMR caseload for people with emotional and/or psychiatric problems
and agreed that J.K.N.'s problems "at times . . . presented as
severe." He stated that J.K.N. "clearly has some psychiatric needs . .
. . However, . . . these needs can be addressed at TYC."
Thompson's testimony certainly
indicates that J.K.N. is a troubled child with psychiatric needs. However, taken
in context, the evidence does not indicate that J.K.N.'s problems rise to the
level of a mental illness rendering him unfit to proceed with the adjudication
and disposition of the delinquency charges brought in this case. In fact, the
record as a whole clearly reflects that, in spite of his psychiatric needs,
J.K.N. understood the nature of the proceedings and was able to consult with
counsel and to assist in his own defense.
At the adjudication hearing, J.K.N.
indicated to the court that he had reviewed the alleged offenses with his
attorney and understood the range of possible punishments available to the court
if he were adjudicated delinquent. He said he understood his right to have the
State bring witnesses forward to testify and to be cross-examined by him, and
that agreeing to stipulate to the evidence would waive those rights. J.K.N. and
his attorney then had the following exchange in open court:

        
 MR. YOUNG: [J.K.N.], I've talked to you several times since this matter has
 been pending in Juvenile Court, have I not?
        
 [J.K.N.]: Yes, sir.
        
 MR. YOUNG: And I told you that in the petition, you're charged with
 essentially giving a false report to the police, criminal mischief; that is,
 damage to property, and either theft or unauthorized use of a motor vehicle.
        
 Do you understand that?
        
 [J.K.N.]: Yes, sir.
        
 MR. YOUNG: And I talked to you today about stipulating to the false report to
 the police officer, causing the property damage to the house, and in regard to
 the car, not theft, but unauthorized use of a motor vehicle?
        
 [J.K.N.]: Yes, sir.
        
 MR. YOUNG: And you understand that's why we are here today?
         [J.K.N.]:
 Uh-huh.
        
 MR. YOUNG: And you also understand we have an absolute right to a trial if we
 want to. In other words, we can make the State call witnesses and make the
 State prove its case, okay? Or we can agree to what the witnesses would
 testify; that is, stipulate to what the witnesses would testify if they were
 called to testify and if they took the stand.
        
 Do you understand that?
        
 [J.K.N.]: Yes, sir.
         THE
 COURT: And I know that you came from Millwood this morning, is that correct?
        
 [J.K.N.]: Yes.
        
 MR. YOUNG: And you've recently arrived here at Juvenile Court from Millwood
 approximately 30 minutes ago, is that correct?
        
 [J.K.N.]: Yes, sir.
        
 MR. YOUNG: And you still understand everything that's going on and you have a
 clear understanding of everything that I've explained to you?
        
 [J.K.N.]: Yes, sir.
        
 MR. YOUNG: And do you still want to testify, or I mean, do you want a trial or
 do you want to stipulate?
        
 [J.K.N.]: Stipulate.
        
 . . . .
        
 MR. YOUNG: And you understand that at the end of this hearing, if the Judge
 finds you engaged in delinquent conduct, he may assess punishment. That is, we
 may move to a disposition phase.
        
 Do you understand that?
        
 [J.K.N.]: Yes, sir.
        
 MR. YOUNG: And I have told you, have I not, that although I'm not going to ask
 for it, there is a possibility that the Judge can and has the option of
 disposing of the case by committing you to TYC for an indeterminate amount of
 time.
        
 Do you understand that?
        
 [J.K.N.]: Yes, sir.
        
 THE COURT: And I've been very up-front in letting you know that's a possible,
 very possible, consequence out of this case, have I not?
        
 [J.K.N.]: Yes, sir.
        
 THE COURT: Okay, and now do you still want to proceed with the stipulation?
        
 [J.K.N.]: Yes, sir.
        
 MR. YOUNG: Okay, and do you feel like you're in your right mind to make this
 decision?
        
 [J.K.N.]: Yes, sir.

As illustrated, the record clearly
shows that J.K.N. expressed his understanding of the delinquent conduct alleged,
the consequences of being adjudicated delinquent, and the effect of stipulating
to evidence rather than requiring live witness testimony on the allegations.
J.K.N. also indicated that his recent stay at the Millwood mental treatment
center did not adversely affect his understanding of the proceedings. In
addition to demonstrating his understanding of the proceedings, J.K.N. actively
participated in his own defense. Following the State's presentation of
stipulated evidence on paragraphs one, two and four, J.K.N. conferred with his
attorney and decided that he was only willing to stipulate to paragraph four,
unauthorized use of a motor vehicle.
After examining the record, we
conclude that the juvenile court's failure to order a psychiatric examination of
J.K.N. on its own motion was not a violation of due process. Accord E.M.R.,
55 S.W.3d at 719 (holding sua sponte hearing on juvenile's mental competency not
required even though juvenile's special education teacher testified that he read
at a second grade level and physician testified that juvenile had
impulse-control problems, attention deficit hyperactivity disorder, and was
bipolar). Accordingly, we hold that the trial court did not err by failing to
sua sponte order an examination of J.K.N.'s mental state. J.K.N.'s first point
is overruled.
IV. Sufficiency of
the Evidence
In his second point, J.K.N.
complains that the evidence is insufficient to sustain the findings required for
a proper disposition of his case. We disagree and overrule J.K.N.'s second
point.
First, J.K.N. argues that the
evidence shows that he is in need of treatment for mental illness, not
rehabilitation; therefore, no disposition can be made under section 54.04 of the
family code. Section 54.04 provides in part that "No disposition may be
made . . . unless the child is in need of rehabilitation or the protection of
the public or the child requires that disposition be made." Tex. Fam. Code
Ann. § 54.04(c).
The juvenile court specifically
found in the order of commitment that J.K.N. "is in need of rehabilitation
and that the protection of the public and the child requires that disposition be
made." These findings are supported by the evidence. J.K.N.'s social
history, which was reviewed by the juvenile court prior to committing J.K.N. to
TYC(1), reflects that J.K.N. has had numerous
previous offenses, including: possession of marijuana; unauthorized use of a
motor vehicle; forgery; possession of a volatile chemical--gasoline; and
terroristic threat. The social history also reveals that J.K.N. has received
in-patient drug treatment on multiple occasions, as well as mental health
treatment. J.K.N. was unsuccessfully discharged from one of these in-patient
programs "due to his behavior and for reportedly assaulting a
teacher."
In addition to the social history
report, Probation Officer Thompson testified that:

        
 Prior to coming to us, [J.K.N.]'s been with our Traditional Probation, he's
 been with our Intensive Supervision Probation plan. He's also been in our Post
 program as well as been on our Electronic Monitor system.
        
 [J.K.N.] basically has exhausted all the resources we have. I've met
 with the JPD Resource Staffing Committee twice within the last couple of
 weeks, and they don't feel that there is any other placement options for
 [J.K.N.] other than TYC at this point.
        
 [J.K.N.] clearly has some psychiatric needs that we need to get him to be
 cognizant of. However, they felt that these needs can be addressed at TYC.
 [J.K.N.]'s behavior of late in the last three months has been spiraling
 out of control. He's had a number of referrals. These incidents make
 about ten referrals to JPD, so we have concerns about [his] behavior out
 in the community and the safety of the community.
        
 [J.K.N.] has made some progress while on our caseload. He completed a
 successful school year in an alternative education program and has complied
 with some of the behavioral management requests that we had. However, again,
 his behavior and criminal activity has seemed to spiral, become more frequent
 and more severe, so at this time, we feel, from JPD's standpoint, we don't
 have any other resources we can offer [him]. [Emphasis added.]

Finally, Thompson offered his
opinion that:

        
 any program that would be appropriate for [J.K.N.] would include attention to
 the psychiatric needs, but also would provide a structured, secure environment
 for [him] that would protect him as well as the people around him, but that
 would also allow him to pursue academic activities and building skills, so a
 program such as TYC certainly offers that.

The above evidence shows that, in
addition to a structured environment conducive to rehabilitation, TYC also
offers appropriate treatment for J.K.N.'s psychiatric needs. In light of this
evidence, we hold that the court's findings that J.K.N. needs rehabilitation and
that J.K.N. and the public require protection from his destructive behavior are
both supported by the evidence and justify J.K.N.'s commitment to TYC.
J.K.N. next complains that the
juvenile court's "routine rendition" of the three specific findings
required by section 54.04(i) lack stated reasons and are unsupported by the
evidence. Section 54.04(i) reads in part:

        
 (i) If the court places the child on probation outside the child's home or
 commits the child to the Texas Youth Commission, the court:
 
        
 (1) shall include in its order its determination that:
 
        
 (A) it is in the child's best interests to be placed outside the child's
 home;
        
 (B) reasonable efforts were made to prevent or eliminate the need for the
 child's removal from the home and to make it possible for the child to
 return to the child's home; and
        
 (C) the child, in the child's home, cannot be provided the quality of care
 and level of support and supervision that the child needs to meet the
 conditions of probation.
 
 

Tex. Fam. Code Ann. § 54.04(i).
The order of commitment issued by
the juvenile court specifically states:

        
 The Court finds it is in the child's best interest to be placed outside the
 child's home. The court also finds that reasonable efforts were made to
 prevent or eliminate the need for the child's removal from the home and to
 make it possible for the child to return to the child's home and the child, in
 the child's home cannot be provided the quality of care and level of support
 and supervision that the child needs to meet the conditions of probation.

We conclude that the evidence
contained in the record and already discussed herein is more than sufficient to
support each of the findings required by 54.04(i). J.K.N.'s social history
evidences his repeated problematic and criminal behavior. Probation Officer
Thompson testified to the varied forms of treatment and probation attempted with
J.K.N. and concluded that J.K.N. had exhausted these options. Clearly, numerous
attempts have been made to cope with J.K.N.'s behavior without resorting to
commitment to TYC. Unfortunately, J.K.N. continues to exhibit delinquent and
criminal behavior in spite of the measures taken to conform his conduct to the
law. Considering the efforts already made, the avenues exhausted, and the
concerns regarding J.K.N.'s threatening and suicidal behavior, we hold that the
juvenile court had sufficient evidence before it to support a commitment to TYC
in compliance with section 54.04(i).
Finally, J.K.N. contends that
"[t]he specific reasons for the Court's findings are nowhere stated in the
order," which violates section 54.04(f)'s mandate that "[t]he court
shall state specifically in the order its reasons for the disposition . . .
." Tex. Fam. Code Ann. § 54.04(f).
J.K.N.'s assertion in this regard
is simply not accurate. After making the necessary findings listed under section
54.04(i), the order of commitment goes on to state:

        
 It further appears to the Court that the best interest of the child and the
 best interest of society will be served by committing him to the care, custody
 and control of the Texas Youth Commission, for the following reasons:
 
 
 There are no facilities,
 services or programs available which would meet the needs of the child;
   
 The Court finds that the
 educational needs of the child can be met by the Texas Youth Commission;
    
 The child has been found by
 the COURT to have violated Section . . .
 31.07(FEL) of the Texas Penal Code, on or about . . . JUNE
 20, 2002, and was adjudicated delinquent on JULY 18,
 2002.
 
 

In addition to the above listed
reasons, the order of commitment stated that J.K.N. had been previously
adjudicated delinquent for four misdemeanor offenses and one felony offense
since September 6, 2000.
Because the juvenile court's order
of commitment contains all of the findings and reasons required by section
54.04, subsections (c), (i), and (f), and because we conclude that all such
findings and reasons are supported by sufficient evidence, we overrule J.K.N.'s
second point.
V. Judgment and
Order of Commitment
In his third point, J.K.N.
complains that the judgment and order of commitment are fundamentally defective.
Specifically, J.K.N. complains that the judgment reflects an impossible date of
birth--July 3, 2002, and that both the judgment and order of commitment
incorrectly state that J.K.N. was adjudicated delinquent based upon paragraphs
one, two and four of the State's petition, rather than just on paragraph
four--unauthorized use of a motor vehicle.
The judgment of delinquency reads
in pertinent part:

        
 [T]he Court after hearing the pleading of all the parties and after hearing
 the evidence and argument of counsel, finds beyond a reasonable doubt that the
 allegations in Paragraph(s), ONE, TWO, and FOUR,
 of the petition filed herein are true and supported by the evidence.
        
 The Court finds that on this the 18th day of JULY
 2002, said child was adjudicated in Paragraph(s) ONE, TWO,
 and FOUR of the petition for the offense(s) of FALSE
 REPORT TO PEACE OFFICER OR LAW ENFORCEMENT EMPLOYEE, Section(s) 37.08,
 which is a MISDEMEANOR, CRIMINAL MISCHIEF, Section(s) 28.03,
 which is a MISDEMEANOR, and UNAUTHORIZED USE OF MOTOR
 VEHICLE, Section(s) 31.07, which is a FELONY,
 and the dates of offenses were MAY 6, 2002 and JUNE
 20, 2002.
        
 The Court also finds that the said child was born JULY 3, 2002.

The order of commitment reads, in
relevant part:

        
 (3) The child has been found by the COURT to have violated
 Section(s) 37.08(MISD), 28.03(MISD), and 31.07(FEL) of the
 Texas Penal Code, on or about MAY 6, 2002 and JUNE
 20, 2002, and was adjudicated delinquent on JULY 18, 2002.

This court is authorized to modify
the juvenile court's judgment. See Tex. R. App. P. 43.2(b); see
also Asberry v. State, 813 S.W.2d 526, 531 (Tex. App.--Dallas
1991, pet. ref'd) (holding an appellate court has authority to reform a judgment
to include an affirmative finding to make the record speak the truth when the
matter has been called to its attention by any source); accord French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Here, modification of
the judgment of delinquency and order of commitment is necessary so that the
record accurately reflects the outcome of J.K.N.'s juvenile adjudication.
Accordingly, we modify the juvenile court's judgment of delinquency and order of
commitment as follows:

 (1) the statement in the first
 quoted paragraph of the judgment of delinquency shall be modified to read:
 "the allegation in Paragraph FOUR of the petition filed
 herein is true and supported by the evidence";
 (2) the statement in the second
 quoted paragraph of the judgment of delinquency shall be modified to read:
 "said child was adjudicated in Paragraph FOUR of the
 petition for the offense of UNAUTHORIZED USE OF MOTOR VEHICLE,
 Section 31.07, which is a FELONY, and the
 date of offense was JUNE 20, 2002";
 (3) the statement in the order of
 commitment shall be modified to read that J.K.N.: "has been found by the COURT
 to have violated Section 31.07(FEL) of the Texas Penal Code,
 on or about JUNE 20, 2002"; and
 (4) the statement in the judgment
 of delinquency regarding J.K.N.'s birth date shall be modified to read:
 "the said child was born JULY 3, 1985."

 
VI. Conclusion
We overrule J.K.N.'s first and
second points, modify the judgment of delinquency and order of commitment as set
forth in section V above, and, as modified, affirm the judgment
of the juvenile court committing J.K.N. to the Texas Youth Commission for an
indeterminate sentence.
 
                                                                      
SUE WALKER
                                                                      
JUSTICE
 
PANEL F: HOLMAN, GARDNER, and
WALKER, JJ.
 
DELIVERED: August 14, 2003

1. "At the disposition hearing, the juvenile court
may consider written reports from probation officers, professional court
employees, or professional consultants in addition to the testimony of
witnesses." Tex. Fam. Code Ann. § 54.04(b).