In the Matter of N.S., a Juvenile
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-319-CV

IN THE MATTER OF
N.S., A JUVENILE
 

From the 19th District Court
McLennan County, Texas
Trial Court # 2000-047-J
                                                                                                                
                                                                                                         
MEMORANDUM OPINION
                                                                                                                

      In this appeal we decide what if anything a juvenile court must do when a juvenile
offender whom the Texas Youth Commission (“TYC”) has referred for transfer to the
institutional division of the Texas Department of Criminal Justice (“TDCJ”) alleges himself to
be incompetent. N.S. contends in his sole issue that the court abused its discretion by failing
to appoint a psychiatric expert to evaluate his competency when his counsel raised the issue at
the beginning of the transfer hearing.
BACKGROUND
      The State initiated proceedings against N.S. in juvenile court by filing a petition on
February 2, 2000 alleging that he had engaged in delinquent conduct by committing the offense
of capital murder on or about May 9, 1999. The State filed an application for court-ordered
temporary mental health services on February 7 alleging N.S. to be mentally ill. The court
signed an order on February 18 finding that N.S. was mentally ill and that he posed a danger
to himself and others. The court ordered that he receive temporary inpatient mental health
services.
      After N.S. was treated and released, he entered a negotiated plea. The court found that
N.S. had engaged in delinquent conduct as alleged. Pursuant to the plea agreement, the court
assessed a determinate sentence of forty years and committed N.S. to TYC.
      TYC referred N.S. to the juvenile court for transfer to TDCJ after he turned sixteen. At
the commencement of the transfer hearing, N.S.’s counsel informed the court that he had
experienced great difficulty communicating with N.S. and had “serious concerns . . . that
[N.S.] [wa]s not able to assist [counsel] in th[e] hearing.” Counsel stated, “I can’t certif[y] to
the court that I think my client understands what’s going on.” Counsel asked the court to
appoint a psychiatrist to determine whether N.S. was competent for the hearing.
      The court made a brief recitation of N.S.’s history regarding mental health issues. The
court stated:
I believe that there is enough documentation in the record from the mental health
professionals that the court of necessity has to rely on to find that there is—there is no
probable cause . . . to believe that he has a mental illness, so therefore I’m going to
overrule your motion . . . .

The court then asked N.S. a series of basic questions (e.g., “Are you [N.S.]?”) to which the
court received mostly unintelligible responses.
      N.S.’s counsel informed the court that these were the same kind of responses he had
obtained from N.S. when he tried to discuss the case with him. The court concluded, “To the
court [N.S.’s responses] match the behavior that is detailed in the papers forwarded to the
court by [TYC], so I’m going to maintain my ruling here, so let’s proceed with the hearing.”
      At the conclusion of the hearing, the court ordered N.S.’s transfer to TDCJ to serve out
the remainder of his sentence.
PERTINENT AUTHORITIES
      Based on the date of N.S.’s delinquent conduct, a former version of section 54.11 of the
Juvenile Justice Code applied to the transfer hearing.


 That statute provides in pertinent part:
(d) At a hearing under this section the court may consider written reports from
probation officers, professional court employees, or professional consultants, in
addition to the testimony of witnesses. At least one day before the hearing, the court
shall provide the attorney for the person to be transferred or released under
supervision with access to all written matter to be considered by the court.
 
(e) At the hearing, the person to be transferred or released under supervision is
entitled to an attorney, to examine all witnesses against him, to present evidence and
oral argument, and to previous examination of all reports on and evaluations and
examinations of or relating to him that may be used in the hearing.

      . . . .
 
(I) On conclusion of the hearing on a person who is referred for transfer under
Section 61.079(a), Human Resources Code, the court may order:

                  (1) the return of the person to the Texas Youth Commission; or
 
                  (2) the transfer of the person to the custody of the institutional division
of the Texas Department of Criminal Justice for the completion of the
person's sentence.

      . . . .
 
(k) In making a determination under this section, the court may consider the
experiences and character of the person before and after commitment to the youth
commission, the nature of the penal offense that the person was found to have
committed and the manner in which the offense was committed, the abilities of the
person to contribute to society, the protection of the victim of the offense or any
member of the victim’s family, the recommendations of the youth commission and
prosecuting attorney, the best interests of the person, and any other factor relevant to
the issue to be decided.
 
Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 46, 1995 Tex. Gen. Laws 2517, 2542
(amended 2001) (current version at Tex. Fam. Code. Ann. § 54.11 (Vernon Supp. 2004))
(hereinafter cited as “Tex. Fam. Code. Ann. § 54.11”).
      The former section


 55.04 (governing juvenile offenders “unfit to proceed”) potentially
applies to N.S.’s case.


 That statute provides in pertinent part:
(a) A child alleged by petition or found to have engaged in delinquent conduct or
conduct indicating a need for supervision who as a result of mental illness or mental
retardation lacks capacity to understand the proceedings in juvenile court or to assist
in his own defense is unfit to proceed and shall not be subjected to discretionary
transfer to criminal court, adjudication, disposition, or modification of disposition as
long as such incapacity endures.
 
(b) If on motion by a party or the court it is alleged that a child may be unfit to
proceed as a result of mental illness or mental retardation, the court shall order
appropriate examinations as provided by Section 55.01 of this chapter. The
information obtained from the examinations must include expert opinion as to whether
the child is unfit to proceed as a result of mental illness or mental retardation.

Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 47, sec. 55.04, 1995 Tex. Gen. Laws 2517,
2545 (amended 1999) (current version at Tex. Fam. Code. Ann. § 55.31 (Vernon 2002))
(hereinafter cited as “Tex. Fam. Code. Ann. § 55.04”).
      Section 55.04 expressly applies to “discretionary transfer[s] to criminal court,
adjudication[s], disposition[s], [and] modification[s] of disposition[s].” Id. The statute does
not on its face seem to apply to section 54.11 transfer hearings. Nevertheless, N.S. contends
that due process requires that a juvenile be competent before he can be made to participate in a
transfer hearing.
      Settled law establishes that juvenile delinquency proceedings must provide constitutionally-mandated due process of law. In re Gault, 387 U.S. 1, 13, 87 S. Ct. 1428, 1436, 18 L. Ed.
2d 527 (1967); L.G.R. v. State, 724 S.W.2d 775, 776 (Tex. 1987); In re J.S.S., 20 S.W.3d
837, 841-42 (Tex. App.—El Paso 2000, pet. denied); see also R.X.F. v. State, 921 S.W.2d
888, 895 (Tex. App.—Waco 1996, no writ) (“Our view is that the state can no more deny a
juvenile equal protection of the law in a determinate-sentence proceeding than it can an adult in
a criminal proceeding.”). However, the process due a juvenile delinquent does not equate to
that due an adult offender in every instance. See Gault, 387 U.S. at 14, 87 S. Ct. at 1436; In
re J.R.R., 696 S.W.2d 382, 383-84 (Tex. 1985) (per curiam); J.S.S., 20 S.W.3d at 842.
      In Lanes v. State, the Court of Criminal Appeals adopted a balancing test it distilled from
eight foundational decisions of the Supreme Court of the United States “to determine whether
and to what degree” a particular constitutional protection must be afforded a juvenile.


 767
S.W.2d 789, 794 (Tex. Crim. App. 1989); accord Hidalgo v. State, 983 S.W.2d 746, 751
(Tex. Crim. App. 1999). This test requires an appellate court to “balance[ ] the function that
[the asserted] constitutional or procedural right serve[s] against its impact or degree of
impairment on the unique processes of the juvenile court.” Lanes, 767 S.W.2d at 794; accord
Hidalgo, 983 S.W.2d at 751-52.
      According to our research, two intermediate appellate courts have employed this test. See
J.S.S., 20 S.W.3d at 842-44; S.D.G. v. State, 936 S.W.2d 371, 378-79 (Tex. App.—Houston
[14th Dist.] 1996, writ denied). We do so as well.
Purposes of Juvenile Justice System
      As the Court noted in Lanes, the Legislature codified the purposes of the juvenile justice
system in the Juvenile Justice Code. See 767 S.W.2d at 794. Section 51.01 provides:
      This title shall be construed to effectuate the following public purposes:

      (1) to provide for the protection of the public and public safety;

      (2) consistent with the protection of the public and public safety:

            (A) to promote the concept of punishment for criminal acts;
 
            (B) to remove, where appropriate, the taint of criminality from children
committing certain unlawful acts; and
 
            (C) to provide treatment, training, and rehabilitation that emphasizes the
accountability and responsibility of both the parent and the child for the
child’s conduct;
 
(3) to provide for the care, the protection, and the wholesome moral, mental, and
physical development of children coming within its provisions;
 
(4) to protect the welfare of the community and to control the commission of unlawful
acts by children;
 
(5) to achieve the foregoing purposes in a family environment whenever possible,
separating the child from the child’s parents only when necessary for the child’s
welfare or in the interest of public safety and when a child is removed from the child’s
family, to give the child the care that should be provided by parents; and
 
(6) to provide a simple judicial procedure through which the provisions of this title are
executed and enforced and in which the parties are assured a fair hearing and their
constitutional and other legal rights recognized and enforced.

Tex. Fam. Code. Ann. § 51.01 (Vernon 2002).
      In addition, the statute which authorizes TYC to refer a juvenile for transfer to TDCJ
provides for such a referral if “the child’s conduct . . . indicates that the welfare of the
community requires the transfer.” Tex. Hum. Res. Code Ann. § 61.079(a)(2) (Vernon
2001). As noted above, section 54.11 allows the court to consider a great many factors in
determining whether to order the requested transfer:
the court may consider the experiences and character of the person before and after
commitment to the youth commission, the nature of the penal offense that the person
was found to have committed and the manner in which the offense was committed, the
abilities of the person to contribute to society, the protection of the victim of the
offense or any member of the victim’s family, the recommendations of the youth
commission and prosecuting attorney, the best interests of the person, and any other
factor relevant to the issue to be decided.
 
Tex. Fam. Code. Ann. § 54.11(k).
      In sum, the Texas juvenile justice system (particularly in the context of a transfer hearing
under section 54.11) requires courts to balance the need for public safety and punishment for
criminal conduct with the medical, educational and rehabilitative needs and the best interests of
the juvenile delinquent, while simultaneously ensuring that his “constitutional and other legal
rights” are protected.
Competency Requirement
      Due process requires that an adult criminal defendant be competent to stand trial. Cooper
v. Okla., 517 U.S. 348, 354, 116 S. Ct. 1373, 1376, 134 L. Ed. 2d 498 (1996); Drope v. Mo.,
420 U.S. 162, 171-72, 95 S. Ct. 896, 903-04, 43 L. Ed. 2d 103 (1975); Alcott v. State, 51
S.W.3d 596, 598 (Tex. Crim. App. 2001).
Competence to stand trial is rudimentary, for upon it depends the main part of those
rights deemed essential to a fair trial, including the right to effective assistance of
counsel, the rights to summon, to confront, and to cross-examine witnesses, and the
right to testify on one’s own behalf or to remain silent without penalty for doing so.

Cooper, 517 U.S. at 354, 116 S. Ct. at 1376 (quoting Riggins v. Nev., 504 U.S. 127, 139-40,
112 S. Ct. 1810, 1817, 118 L. Ed. 2d 479 (1992) (Kennedy, J., concurring)); accord Baltierra
v. State, 586 S.W.2d 553, 556 (Tex. Crim. App. 1979); Garnica v. State, 53 S.W.3d 457, 458
(Tex. App.—Texarkana 2001, no pet.).
      Texas courts have extended this fundamental requirement to criminal proceedings other
than a traditional trial. E.g., Ex parte Potter, 21 S.W.3d 290, 296-98 (Tex. Crim. App. 2000)
(extradition); Thompson v. State, 654 S.W.2d 26, 27-28 (Tex. App.—Tyler 1983, no pet.)
(probation revocation).
      The Juvenile Justice Code likewise provides that a juvenile must be competent to “be
subjected to discretionary transfer to criminal court, adjudication, disposition, or modification
of disposition.” Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 47, sec. 55.04(a), 1995
Tex. Gen. Laws 2517, 2545 (amended 1999); accord Tex. Fam. Code. Ann. § 55.31(a). The
Legislature’s failure to expressly refer to transfer hearings under section 54.11 in this statute
could be construed as an expression of legislative intent that the competency procedures of
section 55.04 do not apply to transfer hearings. Cf. J.S.S., 20 S.W.3d at 842 (Legislature’s
failure to expressly provide for privilege against self-incrimination in statute governing
disposition hearings “could be interpreted as indicating a legislative determination that the
Fifth Amendment privilege does not apply during the disposition hearing”).
      However, section 311.021(1) of the Code Construction Act provides a presumption that
the Legislature enacted section 55.04 intending “compliance with the constitutions of this state
and the United States.” Tex. Gov’t Code Ann. § 311.021(1) (Vernon 1998). Thus, we must
interpret section 55.04 in a manner which renders it constitutional if possible. Marcus Cable
Assocs. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002).
      In addition, the Legislature expressly provided that the Juvenile Justice Code must be
construed in such a manner that “the parties are assured a fair hearing and their constitutional
and other legal rights recognized and enforced.” Tex. Fam. Code. Ann. § 51.01(6). 
Construing section 55.04 so that it does not apply to transfer hearings could arguably be
contrary to these directives.
Impact on Juvenile Justice System
      The Beaumont Court has characterized the transfer hearing as one which provides the
juvenile offender “a second chance to persuade the court that he or she should not be
imprisoned.” In re J.E.H., 972 S.W.2d 928, 931 (Tex. App.—Beaumont 1998, pet. denied);
accord In re H.V.R., 974 S.W.2d 213, 216 (Tex. App.—San Antonio 1998, no pet.); In re
D.S., 921 S.W.2d 383, 386 (Tex. App.—Corpus Christi 1996, writ dism’d w.o.j.).
      The Beaumont Court concluded in J.E.H. that due process requires the appointment of an
expert witness for a juvenile offender in a transfer hearing if the juvenile shows the need for
the expert “and the fact that the issue concerning which the expert is requested is to be a
significant factor in the trial.” 972 S.W.2d at 929 (citing Ake v. Okla., 470 U.S. 68, 83, 105
S. Ct. 1087, 1096, 84 L. Ed. 2d 53 (1985)). Other courts have recognized that the juvenile
has a right to effective assistance of counsel and the right to confront adverse witnesses in a
transfer hearing. See In re R.D.B., 20 S.W.3d 255, 258 (Tex. App.—Texarkana 2000, no
pet.); In re J.M.O., 980 S.W.2d 811, 813 (Tex. App.—San Antonio 1998, no pet.).
      A transfer hearing under section 54.11 is more summary in nature than a trial on the
merits. It can thus be argued that requiring a separate competency inquiry in the context of a
transfer hearing would merely serve to delay what the Legislature intended to be an expedited
matter.
      However, a juvenile offender in a transfer hearing has: (1) a right to counsel; (2) a right to
confront the witnesses against him; (3) a right to present evidence and argument; and (4) a
right to examine before hearing all documentary evidence which may be used in the hearing. 
Tex. Fam. Code. Ann. § 54.11(e). A juvenile’s ability to fully enjoy these rights depends in
large part on his competence. See Cooper, 517 U.S. at 354, 116 S. Ct. at 1376; Baltierra, 586
S.W.2d at 556; Garnica, 53 S.W.3d at 458. Accordingly, we conclude that due process
demands that a juvenile offender be competent before being subjected to a transfer hearing
under section 54.11.
      The Court of Criminal Appeals reached a similar conclusion when it held that an adult
challenging extradition “must be sufficiently competent to consult with his counsel.” Potter,
21 S.W.3d at 296. The Court determined that, if an accused sufficiently raises the issue of
competency in this context, the trial court should conduct a hearing to determine whether the
accused is competent. Id. at 297-98. Because of the expedited nature of extradition
proceedings, the Court concluded that a trial court can refer to the competency provisions of
the Code of Criminal Procedure for guidance but such provisions do not necessarily control. 
Id. at 298 n.11.
      A transfer hearing under section 54.11 is likewise expedited in nature. However, section
54.11 provides for much more participation by the juvenile offender than permitted in a habeas
proceeding challenging extradition. As the Court of Criminal Appeals noted in Potter, a
habeas applicant challenging extradition “could conceivably have knowledge of facts relating
to” only two pertinent issues: (1) whether he is the person identified in the extradition request;
and (2) whether he was present in the demanding state at the time of the alleged offense. Id. at
297.
      Conversely, a juvenile offender in a transfer hearing must be able to consult with counsel
regarding: (1) the witnesses against him; (2) any evidence they may decide to present in
opposition to the transfer request; and (3) any documentary evidence which may be used in the
hearing. See Tex. Fam. Code. Ann. § 54.11(e); see also id. § 54.11(k) (providing for broad
range of evidence which juvenile court may consider in determining whether to order transfer). 
Accordingly, we do not purport to promulgate an expedited competency inquiry tailored to the
purposes of the transfer hearing. Cf. Potter, 21 S.W.3d at 298 n.11.
      Rather, we look to section 55.04 which provides a familiar procedure for juvenile courts
to follow. We have concluded that due process requires that a juvenile offender be competent
to participate in a transfer hearing. Thus, section 55.04 is arguably unconstitutional to the
extent that it does not apply to a transfer hearing. However, we must interpret section 55.04 in
a manner which renders it constitutional if possible. Tex. Gov’t Code Ann. § 311.021(1);
Marcus Cable Assocs., 90 S.W.3d at 706; see also Tex. Fam. Code. Ann. § 51.01(6)
(Juvenile Justice Code must be construed so that constitutional rights are recognized and
enforced).
      As stated, section 55.04 expressly applies to “discretionary transfer[s] to criminal court,
adjudication[s], disposition[s], [and] modification[s] of disposition[s].” Tex. Fam. Code.
Ann. § 55.04(a). The term “modification of disposition” has generally been associated with a
hearing to modify a non-TYC disposition under section 54.05 of the Juvenile Justice Code. 
See Tex. Fam. Code. Ann. § 54.05 (Vernon Supp. 2004); e.g., In re L.R., 67 S.W.3d 332,
335 (Tex. App.—El Paso 2001, no pet.). However, that precise phrase is not defined in the
Juvenile Justice Code. Accordingly, we must apply the ordinary and common meaning of the
phrase. Tex. Gov’t Code Ann. § 311.011 (Vernon 1998); City of Austin v. Sw. Bell Tel.
Co., 92 S.W.3d 434, 442 (Tex. 2002).
      Section 54.05 applies to “[a]ny disposition, except a commitment to the Texas Youth
Commission.” Tex. Fam. Code. Ann. § 54.05(a). Thus, a commitment to TYC is a
“disposition” under the Juvenile Justice Code. In fact, section 54.04(g) refers to a
commitment to TYC under a determinate sentence as “a disposition under Subsection (d)(3).” 
Tex. Fam. Code. Ann. § 54.04(g) (Vernon Supp. 2004). Webster’s defines a “modification”
in pertinent part as “the making of a limited change in something.” Merriam-Webster’s
Collegiate Dictionary 748 (10th ed., 1993).
      The court originally imposed a disposition committing N.S. to TYC. Because TYC asked
the court to change N.S.’s place of commitment from TYC to TDCJ, TYC was necessarily
requesting a modification of the original disposition. Accordingly, we conclude that a transfer
hearing under section 54.11 is a “modification of disposition” proceeding to which section
55.04 applies. Now, we determine whether and/or to what extent the juvenile court complied
with section 55.04.
 

SECTION 55.04
      Section 55.04(b) provides in pertinent part, “If on motion by a party or the court it is
alleged that a child may be unfit to proceed as a result of mental illness or mental retardation,
the court shall order appropriate examinations as provided by Section 55.01 of this chapter.” 
Tex. Fam. Code. Ann. § 55.04(b) (emphasis added). The State contends that N.S. failed to
properly raise the issue because he did not file a written motion alleging his incompetency. 
We disagree.
      Section 55.04(b) requires a “motion.” The Juvenile Justice Code does not define the term
“motion.” See Tex. Fam. Code. Ann. § 51.02 (Vernon Supp. 2004) (“Definitions”
applicable to Juvenile Justice Code). Accordingly, we must apply the ordinary and common
meaning of the term. Tex. Gov’t Code Ann. § 311.011; Sw. Bell Tel. Co., 92 S.W.3d at
442. Black’s Law Dictionary defines a “motion” as a “written or oral application requesting a
court to make a specified ruling or order.” Black’s Law Dictionary 1031 (Bryan A. Garner
ed., 7th ed., West 1999).
      In addition, section 51.17(a) of the Juvenile Justice Code provides that the Rules of Civil
Procedure govern juvenile delinquency proceedings except with respect to the burden of proof
or when in conflict with a provision of the code. Tex. Fam. Code. Ann. § 51.17(a) (Vernon
Supp. 2004). Rule of Civil Procedure 21 permits oral motions if presented during the
hearing.


 Tex. R. Civ. P. 21; accord City of Houston v. Sam P. Wallace & Co., 585 S.W.2d
669, 673 (Tex. 1979); Lee v. Palo Pinto County, 966 S.W.2d 83, 85 (Tex. App.—Eastland),
pet. denied per curiam, 988 S.W.2d 739 (Tex. 1998).
      Finally, we note that, if the Legislature had intended to require a written motion under
section 55.04(b), it could easily have said so. Cf. Tex. Fam. Code. Ann. §§ 54.034(2),
56.01(n)(2) (Vernon 2002) (both discussing plea-bargaining juvenile’s limited right to appeal
rulings on matters raised by pretrial “written motion”). The Legislature’s failure to expressly
require a written motion indicates that it did not so intend. See Lawrence v. CDB Servs., Inc.,
44 S.W.3d 544, 549 (Tex. 2001); Walker v. City of Georgetown, 86 S.W.3d 249, 257 (Tex.
App.—Austin 2002, pet. denied).
      For the foregoing reasons, we conclude that N.S.’s oral motion sufficiently invoked the
court’s obligation under section 55.04(b) to “order appropriate examinations as provided by
Section 55.01.” Tex. Fam. Code. Ann. § 55.04(b).
      The version of section 55.01 applicable to N.S.’s case provides in pertinent part, “At any
stage of the proceedings under this title, the juvenile court may order a child alleged by
petition or found to have engaged in delinquent conduct or conduct indicating a need for
supervision to be examined by appropriate experts, including a physician, psychiatrist, or
psychologist.” Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 47, sec. 55.01(a), 1995 Tex.
Gen. Laws at 2542-43 (amended 1999) (current version at Tex. Fam. Code. Ann. § 55.11
(Vernon 2002)).
      Section 55.04(b) requires a juvenile court on motion to order the examination of the child
by an “appropriate expert.” The court failed to do so in N.S.’s case. We must determine
whether N.S. was harmed by this error.
 

HARM ANALYSIS
      Because N.S. received a determinate sentence, we apply the harmless error standards of
Rule of Appellate Procedure 44.2, usually applicable to criminal appeals. In re L.R., 84
S.W.3d 701, 706-07 (Tex. App.—Houston [1st Dist.] 2002, no pet.); In re C.R., 995 S.W.2d
778, 785-86 (Tex. App.—Austin 1999, pet. denied). The proper harm analysis depends on
whether the error at issue is “constitutional” or “non-constitutional.” See Tex. R. App. P.
44.2; Aguirre-Mata v. State, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999).
      N.S. does not complain that the court erred by making him proceed with the transfer
hearing even though he was incompetent. That would be a constitutional error. Instead, N.S.
complains that the court used an erroneous procedure to determine whether he was competent. 
This constitutes a “non-constitutional” error. See Carranza v. State, 980 S.W.2d 653, 656
(Tex. Crim. App. 1998); Rachuig v. State, 972 S.W.2d 170, 174-76 (Tex. App.—Waco 1998,
pet. ref’d).
      Such error does not require reversal unless we conclude that N.S.’s “substantial rights”
were affected thereby. Tex. R. App. P. 44.2(b). As this Court has explained, 
In applying the test for “harmless error,” our primary question is what effect the
error had, or reasonably may have had, upon the jury’s decision. We must view the
error, not in isolation, but in relation to the entire proceedings. An error is harmless
if the reviewing court, after viewing the entire record, determines that no substantial
rights of the defendant were affected because the error did not influence or had only a
slight influence on the verdict. Stated another way, an error is harmless if the court is
sure, after reviewing the entire record, that the error did not influence the jury or had
but a very slight effect on its verdict.

      . . . .

 

The error must have affected the outcome of the lower court proceedings. That is
to say, if we have “grave doubts” about whether an error did not affect the outcome,
we must treat the error as if it did. “Grave doubt,” means that, “in the judge’s mind,
the matter is so evenly balanced that he feels himself in virtual equipoise as to the
harmlessness of the error.” The uncertain judge should treat the error, not as if it
were harmless, but as if it affected the verdict (i.e., as if it had a “substantial and
injurious effect or influence in determining the jury's verdict”).

Fowler v. State, 958 S.W.2d 853, 865 (Tex. App.—Waco 1997) (quoting O’Neal v.
McAninch, 513 U.S. 432, 435, 115 S. Ct. 992, 994, 130 L. Ed. 2d 947 (1995)), aff’d, 991
S.W.2d 258 (Tex. Crim. App. 1999).
      Rather than ordering a psychiatric examination, the court reviewed “the papers forwarded
to the court by [TYC].” The court also took judicial notice of “all the paperwork filed
regarding [N.S.’s] mental health status and all the findings that were made pursuant to that.” 
Although the court did not specifically identify these “papers,” the reporter’s record contains
four TYC reports concerning N.S.: (1) a psychological evaluation report regarding four
evaluations, the most recent having been conducted on April 23, 2001 (the “Cuppett report”);
(2) at TYC Corsicana Residential Treatment Center report regarding a November 25, 2000
psychological consultation (the “Lloyd report”); (3) a memorandum prepared by a psychiatrist
at the residential treatment center regarding a May 1, 2001 mental health status review hearing
held to determine whether N.S. should be admitted to TYC’s Corsicana Stabilization Unit (the
“Taft report”); and (4) an August 25, 2001 report prepared by TYC personnel reviewing
N.S.’s history and recommending that he be transferred to TDCJ (the “Cucolo report”). In
addition, N.S. offered a report regarding a June 25, 1999 psychological evaluation (the
“Shinder report”) and a January 12, 2000 psychiatric report (the “Blaisdell report”).
      Paul Cuppett, a licensed professional counselor employed by TYC, prepared the Cuppett
report and testified at the transfer hearing. Cuppett testified and his report reflects his opinion
that N.S. is malingering (i.e., faking his psychiatric symptoms). He testified that N.S.’s non-responsive conduct is consistent with his behavior throughout the course of his incarceration
and, specifically, during his various psychiatric/psychological evaluations. Cuppett opined that
another psychiatric examination would not likely yield different results. He testified, “The
preponderance, though, of the data from my evaluation and prior evaluations all suggest
malingering is at least a piece of what’s going on with [N.S.].” He noted that any expert who
was called upon to conduct an additional evaluation “would once again be reliant on data
generated by other evaluators as well as their impressions on what the lack of interaction
means.”
      The Lloyd report, the Taft report, and the Cucolo report all conclude that N.S. has been
malingering throughout the course of his incarceration.
      The Shinder report similarly notes that N.S. “did not put forth optimal effort in [his]
evaluation.” The Shinder report reflects that N.S. understood the charges against him at that
time and understood the probable disposition of his case.


 The Shinder report also indicates
that N.S. understood the nature of the proceedings against him.



      The Blaisdell report provides information most likely to support a conclusion that N.S.
was not competent at the time of the transfer hearing. Dr. Blaisdell opined that N.S. seemed
to have difficulty understanding the nature of the proceedings or the probable disposition of his
case. He concluded:
This case involves the analysis of several pieces of data, many of which do not point
to the same conclusion, if analyzed at different points in time. If [N.S.] had been
interviewed and assessed for this through much of 1999, he would likely have been
found competent to stand trial. It is clear from the videotape shortly after his arrest
that he was able to understand and appreciate the charges and would have likely been
able to assist his attorney in his defense. This is supported by some of the findings
from both psychological evaluations performed in the first half of 1999. However,
beginning this past Fall, I believe that the evaluee began experiencing a deterioration
of his mental status and his psychiatric functioning. This is clearly a young man with
some sociopathic traits; as such, the probability of malingering cannot be discounted. 
However, in my professional medical opinion, I believe that this is not the most
relevant problem at this point.

      In sum, all but the Blaisdell report suggest that N.S. is competent and malingering. Even
Dr. Blaisdell could not discount “the probability of malingering.” Cuppett testified that N.S.’s
behavior while in TYC custody and his conduct at each of his psychiatric/psychological
evaluations has remained consistent. He opined that an additional evaluation would not likely
yield a different conclusion.
      For the foregoing reasons, the court’s erroneous failure to appoint an “appropriate expert”
to evaluate N.S.’s competency did not affect his substantial rights. See Tex. R. App. P.
44.2(b). Accordingly, we conclude that his sole issue is without merit.
      We affirm the judgment.
 
                                                                   FELIPE REYNA
                                                                   Justice
Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



      (Chief Justice Gray concurring)
Affirmed
Opinion delivered and filed February 11, 2004
[CV06]