**In the Matter of H.V.R., a Child.**

**No. 04–97–00364–CV.**

Court of Appeals of Texas,
San Antonio.

May 6, 1998.

Rehearing Overruled May 27, 1998.

Michael Stephen Raign, San Antonio, for Appellant.

Mary Beth Welsh, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before STONE, GREEN and DUNCAN, JJ.

**OPINION**

DUNCAN, Justice.

H.V.R. appeals the trial court's order transferring him from the Texas Youth Commission to the Texas Department of Criminal Justice—Institutional Division to serve the remainder of his twentyfive year determinate sentence for delinquent conduct for murder and attempted murder. He asks that we

reverse the trial court's transfer order and recommit him to TYC, so he may be discharged on his twenty-first birthday, because the trial court failed to hold his transfer hearing before the thirtieth day before his eighteenth birthday. We hold the trial court's failure to hold a transfer hearing before the thirtieth day before a juvenile's eighteenth birthday constitutes error but it does not deprive the juvenile court of jurisdiction to thereafter order the juvenile transferred to TDCJ. We therefore overrule H.V.R.'s point of error and affirm the trial court's transfer order.

## APPLICABLE VERSION OF TITLE 3

H.V.R. was committed to TYC for acts committed on or about October 1, 1993; therefore, the version of Title 3 of the Texas Family Code in effect on that date applies.[1] Under this version of Title 3, the trial court "must" hold a "release hearing on a person who is the subject of a notice of transfer ... before 30 days before the person's 18th birthday." Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 13, 1987 Tex. Gen. Laws 1891, 1896 (amended 1995) (current version at TEX. FAM.CODE § 54.11(h) (Vernon 1996)). At the hearing, the trial court "may" order the juvenile recommitted to TYC without a determinate sentence, transferred to TDCJ "for the completion of [his] determinate sentence," or "discharge[d]." Act of June 15, 1991, 72nd Leg., R.S., ch. 574, § 3, 1991 Tex. Gen. Laws 2053, 2053–54 (amended 1995) (current version at TEX. FAM.CODE § 54.11(i) (Vernon 1996)). If the juvenile has not been discharged or transferred by his twenty-first birthday, TYC "shall discharge [him] from its custody...." Act of June 15, 1991, 72nd Leg., R.S., ch. 574, § 4, 1991 Tex. Gen. Laws 2053, 2054 (amended 1995) (current version at TEX. HUM. RES.CODE 61.084(e) (Vernon Supp.1998)).

1. See Act of May 31, 1995, 74th Leg., R.S., ch. 262, §§ 105–06, 1995 Tex. Gen. Laws 2517, 2590–91; Act of June 20, 1993, 73rd Leg., R.S., ch. 1048, § 8, 1993 Tex. Gen. Laws 4473, 4476; Act of June 15, 1991, 72nd Leg., R.S., ch. 574, § 5, 1991 Tex. Gen. Laws 2053, 2054; Act of June 16, 1991, 72nd Leg., R.S., ch. 557, § 4, 1991 Tex. Gen. Laws 1971, 1972; Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 20, 1987 Tex. Gen. Laws 1891, 1898.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 1994, fifteen-year-old H.V.R. pled true to the State's petition alleging delinquent conduct for murder and attempted murder, and the juvenile court assessed a determinate sentence of twenty-five years and committed him to TYC. In the sixth month before H.V.R.'s eighteenth birthday, TYC notified the juvenile court that H.V.R. would not complete his determinate sentence by his eighteenth birthday and asked the court to conduct a release hearing before the thirtieth day before H.V.R.'s next birthday and issue a bench warrant to permit H.V.R.'s appearance at the hearing. The trial court granted both requests, scheduling a hearing for the Monday preceding the thirtieth day before H.V.R.'s eighteenth birthday and, on the Thursday preceding the hearing, issuing a bench warrant. On the Friday preceding the hearing, however, the deputy sheriff charged with executing the bench warrant notified the court he was unable to do so because icy roads prevented transporting H.V.R. to San Antonio, a situation that continued through the following Tuesday. As a result, H.V.R.'s transfer hearing was not held until the twenty-seventh day before his eighteenth birthday.[2] H.V.R. objected to the hearing on this ground, but the trial court overruled his objection and, at the conclusion of the hearing, ordered him transferred to TDCJ on his eighteenth birthday to serve the remainder of his sentence.

## STANDARD OF REVIEW

■ H.V.R. asks us to review the juvenile court's resolution of a question of law—whether the failure to hold a transfer hearing before the thirtieth day before his eighteenth birthday deprived the court of jurisdiction to thereafter transfer him to TDCJ or, as a

2. "In computing a period of days, the first day is excluded and the last day is included." TEX. GOV'T CODE ANN. § 311.014(a) (Vernon 1988). Accordingly, the thirtieth day before H.V.R.'s eighteenth birthday on February 14, 1997 was Tuesday, January 14, 1997.

matter of law, constituted harmful error. We therefore review the trial court's ruling de novo. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

### DISCUSSION

■ "In construing a statute, our primary objective is to give effect to the Legislature's intent." *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997). We therefore "presume[ ] that ... a just and reasonable result is intended," and the "public interest is favored over any private interest." TEX. GOV'T CODE ANN. § 311.021(3), (5) (Vernon 1988). "[W]hether or not the statute is considered ambiguous on its face," we may consider the "object sought to be obtained," the "circumstances under which the statute was enacted," the "legislative history," and the "consequences of a particular construction." *Id.* § 311.023(1)-(3), (5). Against this background, we must determine whether "must" should be construed as "creat[ing] or recogniz[ing] a condition precedent" or, conversely, whether "the context in which [it] appears necessarily requires a different construction...." *Id.* § 311.016(3) (Vernon Supp.1998).

In enacting Title 3, the Texas Legislature sought "to protect the welfare of the community" and, "consistent with the protection of the public interest, to remove from children committing unlawful acts the taint of criminality and the consequences of criminal behavior and to substitute a program of treatment, training, and rehabilitation."[3] In 1987, consistent with its dominant purpose of protecting the community welfare, the Legislature amended Title 3 to permit a juvenile court to assess a "determinate sentence"[4] when a juvenile committed capital murder or one of the enumerated first-degree felony offenses.[5] *See generally* Robert O. Dawson, *The Third Justice System: The New Juvenile–Criminal System of Determinate Sentencing for the Youthful Violent Offender in Texas,* 19 ST. MARY's L.J. 943 (1988).

Under this new determinate sentencing scheme, if a prosecutor obtained grand jury approval of a petition alleging delinquent conduct for one of the enumerated violent offenses,[6] the petition was deemed an indictment,[7] and the juvenile court was authorized to assess a determinate sentence by which the juvenile was initially committed to TYC and then, "on or after the 18th birthday of the child,"[8] transferred by TYC to the Texas Department of Criminal Justice pursuant to section 61.084 of the Texas Human Resources Code "for any term of years not to exceed 30 years."[9]

The 1987 version of section 61.084 required TYC to transfer to TDCJ all eighteen-year-old juveniles committed to its custody under a section 54.04(d)(3) determinate sentence if the juvenile had not yet completed his sentence or been released with the approval of, or by order of, the committing juvenile court.[10] Transfer was not, however, auto-

**3.** Act of June 16, 1973, 63rd Leg., R.S., ch. 544, § 1, 1973 Tex. Gen. Laws 1460, 1461 (amended 1995) (current version at Tex. Fam.Code Ann. § 51.01 (Vernon 1996)).

**4.** Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 9, 1987 Tex. Gen. Laws 1891, 1894–95 (amended 1997) (current version at TEX. FAM.CODE ANN. § 54.04(d)(3) (Vernon Supp.1998)).

**5.** *Id.;* Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 7, 1987 Tex. Gen. Laws 1891, 1893–94 (amended 1995, 1997) (current version at TEX. FAM.CODE ANN. § 53.045(a) (Vernon Supp.1998)).

**6.** *Id.*

**7.** *Id.*

**8.** Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 3, 1987 Tex. Gen. Laws 1891, 1891 (amended 1993) (current version at TEX. FAM.CODE ANN. § 51.13(c)(3) (Vernon 1996)).

**9.** Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 9, 1987 Tex. Gen. Laws 1891, 1895 (amended 1991, 1995, 1997) (current version at TEX. FAM. CODE ANN. § 54.04(d)(3) (Vernon Supp.1998)). The legislature increased the maximum determinate sentence to 40 years in 1991. Act of June 16, 1991, 72nd Leg., R.S., ch. 557, § 2, 1991 Tex. Gen. Laws 1971, 1972 (amended 1995, 1997) (current version at TEX. FAM. CODE ANN. § 54.04(d)(3)(A) (Vernon Supp.1998)).

**10.** Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 16, 1987 Tex. Gen. Laws 1891, 1897 (amended 1991, 1995) (current version at TEX. HUM. SER. CODE § 61.084(c) (Vernon Supp.1998)). This provision was deleted in the 1991 amendments. Act of June 15, 1991, 72nd Leg., R.S., ch. 574, § 4, 1991 Tex. Gen. Laws 2053, 2054. Since

matic. Rather, the determinate sentencing scheme provided the juvenile with a "second chance hearing" at which the juvenile was given a "second chance to persuade the court that he should not be imprisoned."*In re D.S.*, 921 S.W.2d 383, 386 (Tex.App.—Corpus Christi 1996, writ dism'd w.o.j.); *see* Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 13, 1987 Tex. Gen. Laws 1891, 1896 (amended 1995) (current version at TEX. FAM.CODE ANN. § 54.11 (Vernon 1996)). To this end, if a juvenile committed to TYC's custody under a determinate sentence had not been released and would not complete his sentence by his eighteenth birthday, TYC was required to send the juvenile court notice in the sixth month before the juvenile's eighteenth birthday that it would transfer the juvenile to TDCJ on his eighteenth birthday.[11] The juvenile court was then required to hold a release hearing "before 30 days before the [juvenile]'s 18th birthday." Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 13, 1987 Tex. Gen. Laws 1891, 1896 (amended 1995) (current version at TEX. FAM.CODE ANN. § 54.11(h) (Vernon 1996)). In making a transfer determination, the juvenile court was permitted to consider "the experiences and character of the [juvenile] before and after commitment to [TYC], the nature of the penal offense that the [juvenile] was found to have committed and the manner in which the offense was committed, [and] the abilities of the [juvenile] to contribute to society," as well as "the protection of the victim," the recommendations of TYC and the prosecutor, and the "best interests" of the juvenile. *Id.* at 1897 (current version at TEX. FAM.CODE ANN. § 54.11(k) (Vernon 1996)). "The legislative intent behind this requirement is that the child should be discharged, placed on TYC parole, or transferred to the [TDCJ] as soon as possible after his 18th birthday. In any event, he should not be kept in a TYC facility for any longer than necessary after that date to complete the legal steps necessary for parole, discharge, or transfer." Dawson, *supra*, at 1005.

At the time the determinate sentencing scheme was enacted, therefore, the Texas Legislature recognized that juveniles who commit violent offenses, such as the murder committed by H.V.R. in this case, must be punished appropriately but, at the same time, TYC's resources were and would continue to be severely compromised by the burgeoning number of juvenile offenders, the longer sentences permitted by the determinate sentencing scheme and demanded by the nature of certain offenses, and the restrictions on TYC's parole authority. *Id.* at 961–62. TYC's ability to transfer juvenile offenders to the adult criminal justice system as soon as legally possible, when a transfer was appropriate, was thus a critical element of the determinate sentencing scheme. *See id.*

H.V.R. interprets the determinate sentencing scheme as depriving the trial court of jurisdiction to transfer him to TDCJ if it fails to hold a transfer hearing before the thirtieth day before his eighteenth birthday and, if that occurs, as entitling him to remain at TYC until he is released at the age of twenty-one. We disagree.

At the time of H.V.R.'s offenses, Title 3 provided a transfer hearing for a juvenile committed to TYC under a determinate sentence before the thirtieth day before the juvenile's eighteenth birthday. Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 13, 1987 Tex. Gen. Laws 1891, 1896 (amended 1995) (current version at TEX. FAM.CODE ANN. § 54.11(h) (Vernon 1996)). But, at the same time, Title 3 expressly contemplated that a juvenile might not still be in TYC's custody on his twenty-first birthday because he had been transferred to TDCJ. *See* Act of June 15, 1991, 72nd Leg., R.S., ch. 574, § 4, 1991 Tex. Gen. Laws 2053, 2054 (amended 1995, 1997) (current versions at TEX. HUM. SER. CODE ANN. § 61.084(d), (f)-(g) (Vernon Supp. 1998)). Under H.V.R.'s interpretation of these statutes, however, no entity could order a juvenile transferred to TDCJ between the statutorilymandated transfer hearing

---

then, the statute has provided that if the juvenile has not been discharged or transferred by his twenty-first birthday, TYC must discharge him on that date. TEX. HUM. SER.CODE § 61.084(e) (Vernon Supp.1998).

11. Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 17, 1987 Tex. Gen. Laws 1891, 1898 (amended 1995) (current version at TEX HUM. SER.CODE § 61.079 (Vernon Supp.1998)).

date and his twenty-first birthday if the release hearing was not timely held—even if the juvenile court's failure to hold the hearing timely represented a preliminary decision to permit the juvenile to remain in TYC, and that preliminary decision proved completely unworkable; even if the juvenile court failed to receive notice that a hearing was required; even if the notice contained a typographical error in the juvenile's birth date or the date by which the hearing must be held; and even if the safety of the juvenile and all concerned precluded a timely hearing, as was the situation here. H.V.R.'s jurisdictional argument, if adopted, could thus easily produce results that would be unreasonable and entirely inconsistent with the legislative intent underlying the determinate sentencing scheme—to ensure that a juvenile who commits one of the enumerated violent crimes is entrusted to TYC, rather than a state prison, during his juvenile years but then transferred to the adult criminal justice system to complete his determinate sentence as soon as possible after he becomes an adult if and when imprisonment becomes appropriate and necessary for the protection of the public welfare.

 To enable the juvenile court and TYC to effectuate the legislative intent underlying the determinate sentencing scheme, we hold that "must," as used by the Legislature in the version of section 54.11(h) governing this case, was intended to mean "should" in light of its context, the legislative intent underlying the determinate sentencing scheme, the presumption that the Legislature intends a just and reasonable result and the promotion of the public interest over any private interest in all of its enactments, and the consequences of interpreting "must" as creating a condition precedent. As a result, we further hold that a juvenile court's failure to hold a release hearing before the thirtieth day before a juvenile's eighteenth birthday constitutes error but not fundamental error, and it does not deprive the juvenile court of jurisdiction to order the juvenile transferred to TDCJ before the juvenile's 18th birthday.

### Harm Analysis

In anticipation of our holding that the trial court's error was not fundamental, H.V.R. argues in the alternative that the error is harmful and reversible because it

deprived him of his right to remain in TYC until he is discharged on his twenty-first birthday. We reject this argument because it implicitly assumes what we have expressly rejected—that the juvenile court's transfer order was void because it did not have jurisdiction to hold a release hearing or transfer H.V.R. after the thirtieth day before H.V.R.'s eighteenth birthday. Because the court's order transferring H.V.R. to TDCJ is effective, H.V.R. was not entitled to remain in TYC after the effective date of the transfer order; he will not be in TYC's custody on his twenty-first birthday; and he will not be eligible for discharge by TYC on that date or any other. Nor has H.V.R. been otherwise harmed by the trial court's error, as he effectively concedes by failing to offer any other argument to support his claim of harmful error.

### Conclusion

Under the version of Title 3 in effect on the date of H.V.R.'s offenses, the trial court was required to hold a release hearing before the thirtieth day before H.V.R.'s eighteenth birthday, and its failure to do so constitutes error. The error was not, however, fundamental or harmful. We therefore overrule H.V.R.'s point of error and affirm the juvenile court's order transferring him to the Texas Department of Criminal Justice to serve the remainder of his determinate sentence.