COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-418-CV

 

 

IN THE MATTER OF L.G.                                                                       

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

Appellant L.G., a juvenile, appeals his
determinate sentence of four years after the trial court adjudicated him
delinquent.  In one point, L.G. argues
that he was denied effective assistance of counsel when his trial counsel
advised him to waive the requirement of obtaining grand jury approval of the
State=s
petition before a determinate sentence could be imposed.  We affirm.

 








II. 
Factual and Procedural Background

The State alleged that L.G. engaged in delinquent
conduct by committing two counts of aggravated assault with a firearm.  The facts underlying the charges of
aggravated assault are not in dispute. 
L.G., who was fifteen years old at the time of the incident, had a
series of confrontations with the victims, Raul Mata and Jose Conchas.  On the night of October 14, 2007, immediately
following a dispute with the victims, L.G. fired a shotgun several times at
them.  They were sitting in their vehicle
in line at a drive-through restaurant.  L.G.
hit both Mata and Conchas in the back with Abirdshot,@ and
both victims saw L.G. discharge the shotgun several times.  They were released that night from the
hospital without serious injury.








L.G. was placed in detention on October 22, 2007.  On October 26, the State filed a petition
regarding a child engaged in delinquent conduct, alleging in two counts that
L.G. Aengaged
in delinquent conduct in that [he] violated a penal law of this state
punishable by imprisonment, to-wit: Section 22.02 of the Texas Penal Code.@[2]  The trial court held an adjudication hearing
and a disposition hearing on November 14. 
Prior to these hearings, L.G., his attorney, and one of his parents
signed a waiver of grand jury approval. 
This waiver allowed the trial court to impose a determinate sentence
without the State first seeking grand jury approval.[3]

At the end of the adjudicative hearing, the trial
court found that L.G. had engaged in delinquent conduct as alleged by the State=s
petition based on the stipulated evidence. 
L.G. testified at the disposition hearing that he had only one prior
contact with the juvenile department, for which he received a supervisory
caution for an Aaccident/damage under $200@ in
February 2006.  Patsy Paxton, of Tarrant
County Juvenile Services, was the officer who supervised L.G. while he was in
detention.  Paxton testified that L.G.
was a good candidate for probation, that he would be able to successfully
complete probation, that he behaved well in detention, that he attended school
regularly and was passing all his classes, and that he had a good
attitude.  She did testify, however, that
L.G. associated with some gang members but that he was not a member
himself.  L.G.=s father
testified that this was L.G.=s first
offense and that he would ensure that L.G. complied with the terms of
probation.








L.G. testified that if the trial court placed him
on probation he would comply with all terms and conditions, abide by any drug
testing program, and stay away from the victims.  He also testified that he had no problems at
home or school and that he understood the need to complete his education.

At the conclusion of the evidence, L.G.=s
attorney requested that the court accept the juvenile department=s
recommendation of community supervision. 
The State did not recommend a disposition.

The trial court committed L.G. to TYC=s
custody for four years, with a possible transfer to the Institutional Division
of the Texas Department of Criminal Justice (ATDCJ@).  This appeal followed.

                                    III.  Standard of Review








Juveniles are entitled to effective assistance of
counsel, and such a claim should be reviewed under the Strickland
standard.  Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); In re R.D.B., 102
S.W.3d 798, 800 (Tex. App.CFort
Worth 2003, no pet.).  To establish
ineffective assistance of counsel, an appellant must show by a preponderance of
the evidence: (1) that his counsel=s
representation fell below the standard of prevailing professional norms; and
(2) that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064; Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under
the first Strickland prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.








A reviewing court will rarely be in a position on
direct appeal to fairly evaluate the merits of an ineffective assistance
claim.  Thompson, 9 S.W.3d at 813B14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is
reliable.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
the appellant must show that there is a reasonable probability that, but for
counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id., 104 S. Ct. at 2068.  The ultimate focus of our inquiry must be on
the fundamental fairness of the proceeding whose result is being
challenged.  Id. at 697, 104 S.
Ct. at 2070.

There is no requirement that we approach the
two-pronged inquiry of Strickland in any particular order, or even
address both components of the inquiry if the defendant makes an insufficient
showing on one component.  Id.,
104 S. Ct. at 2069.








                                            IV.  Analysis

L.G. argues that he was denied effective
assistance of counsel when his trial counsel advised him to sign the waiver of
grand jury approval.  He claims that the
advice was an error which no reasonable attorney would make because it doubled
his minimum incarceration time and exposed him to a possible transfer to the
adult prison system.








When a juvenile commits a felony, the juvenile
court may impose either an indeterminate sentence[4]
or a determinate sentence.[5]  TEX. FAM. CODE ANN. '
54.04(d)(2)B(3).  If a child committed aggravated assault,
under an indeterminate sentence he would spend at least one year in a TYC
residential facility, but TYC would have to release him no later than his
nineteenth birthday.  Id. '
54.04(d)(2); TEX. HUM. RES. CODE ANN. ' 61.084(e).  That same child, under a determinate
sentence, would serve a two-to-twenty-year sentence, initially at a TYC
residential facility, with a possible transfer to TDCJ.  TEX. FAM. CODE ANN. '
54.04(d)(3)(B); TEX. PENAL CODE ANN. ' 22.02;
37 TEX. ADMIN. CODE ' 85.25(c)(2)(B).








A trial court lacks the authority to impose a
determinate sentence unless the State presents its petition to the grand jury,
and the grand jury approves it.  TEX. FAM. CODE ANN. '' 53.045,
54.04(d)(3); S.J., 977 S.W.2d at 149; In re H.V.R., 974 S.W.2d
213, 215 (Tex. App.CSan Antonio 1998, no pet.).  If the State obtains grand jury approval in
accordance with section 53.045, then the petition is deemed an indictment,
allowing the juvenile to be transferred from TYC to TDCJ.  S.J., 977 S.W.2d at 149.  However, a juvenile may waive his right to
grand jury approval if all statutory and constitutional requirements are
satisfied.  In re A.R.A., 898
S.W.2d 14, 15B16 (Tex. App.CAustin
1995, no writ).[6]








The trial court found that L.G. committed two
counts of aggravated assault, a second degree felony making him eligible for a
determinate sentence.  See TEX. FAM. CODE ANN. '
53.045(a)(6); TEX. PENAL CODE ANN. '
22.02.  The State, for reasons not found
in the record, did not present its petition to the grand jury for
approval.  However, L.G., his trial
counsel, and one of his parents signed a waiver of grand jury approval prior to
the trial, giving the trial court the power to impose a determinate sentence of
four years in the custody of TYC with a possible transfer to TDCJ.  A.R.A., 898 S.W.2d at 15B16.  L.G. argues that his trial counsel=s advice
to sign the waiver constituted ineffective assistance of counsel because the
waiver enabled the trial court to impose a determinate sentence when the State
only sought an indeterminate sentence.

A.  Validity
of the Waiver

Within the discussion of his issue, L.G.
challenges the validity of the waiver by asserting that he did not understand
the consequences of waiving grand jury approval.  A juvenile may waive the requirement of
presentation to the grand jury if:

(1) the waiver is made by
the child and the attorney for the child;

 

(2) the child and the
attorney waiving the right are informed of and understand the right and the
possible consequences of waiving it;

 

(3) the waiver is
voluntary; and

 

(4) the waiver is made in
writing or in court proceedings that are recorded.

 

TEX. FAM. CODE ANN. ' 51.09
(Vernon 2002); A.R.A., 898 S.W.2d at 16.








L.G. concedes that he, his attorney, and one of
his parents signed the waiver and that the trial court acknowledged the signed
waiver in open court.  By signing the
document, he acknowledged that he was Ainformed
of and underst[ood his] right to have this matter presented to the Grand Jury,@ and
that he Awaive[d]
the right to have the Grand Jury approve the Petition and respectfully
request[ed] and consent[ed] that the trial proceed upon the Petition as filed
and to accept a Determinate Sentence waiving the requirement of Grand Jury
Approval.@

L.G. argues that the waiver he signed does not
adequately explain the Aintricacies of the determinate sentencing
statute.@  Texas law requires that the child and
attorney are Ainformed of and understand the
right and the possible consequences of waiving@ that
right.  TEX. FAM. CODE ANN. '
51.09(2).  There is no showing in the
record that L.G. did not understand the possible consequences of waiving his
right to grand jury approval.

L.G. further argues that the trial court=s
admonishment at the beginning of the adjudication hearing did not expand his
knowledge.  The trial court explained the
right of grand jury approval and the consequences of waiving that right in the
following exchange:

THE COURT: Now, the Court
makes note that you have signed and your attorney has signed and also your
parents a waiver of grand jury approval?

 

[APPELLANT:] Yes, ma=am.

 

THE COURT: These are
second-degree felonies; is that correct?

 

[THE STATE:] That=s correct, Your Honor.

 








THE COURT: Now, [L.G.],
what that means is the State in this case has a right to take this petition to
the grand jury and seek grand jury approval. 
And if the grand jury gives the State approval in this case, then the
possible sentence would be increased with this law violation if you were found
to have violated this law.

 

It=s my understanding that
the district attorney has not gone before the grand jury to seek approval, but
you and your attorney have discussed this matter and you=ve each signed this paper
saying that you would like to give up your right to have the grand jury approve
your petition and that, instead, you=d like to agree that this Court should consider
your petition as if it=s been approved by the grand
jury, which would increase the sentencing possibilities in this case since this
is a second-degree felony up to a possibility of a 20-year sentence.

 

Do you understand that?

 

[APPELLANT:] Yes, ma=am.

 

From this exchange, L.G. knew that the State was
required to obtain grand jury approval of its petition before the court could
impose an increased sentence of up to twenty years and that the waiver relieved
the State from its burden of obtaining grand jury approval.  The trial court informed L.G. that he faced a
greater sentence if the grand jury approved the petition or if he waived that
requirement than he would without the grand jury approval or waiver.  L.G. indicated that he and his trial counsel
had discussed the waiver and that he understood the court=s
admonishment.








We hold that L.G. and his attorney were informed
of and understood the right of grand jury approval and the possible
consequences of waiving that right because L.G. and his attorney signed the
waiver stating that they were informed of and understood the right; the trial
court clearly informed L.G. in the presence of his attorney of his right; the
trial court informed L.G. that he faced an increased sentence of up to twenty
years if he waived this right; and L.G. told the trial court that he understood
the admonishment.  See In re
B.J., 960 S.W.2d 216, 220 (Tex. App.CSan
Antonio 1997, no pet.) (holding that the court=s
admonishment was ineffective and that the juvenile=s plea
of true was invalid when the court=s
admonishment failed to inform the juvenile that, by pleading true, he faced a
sentence of up to forty years); In re R.W., 694 S.W.2d 578, 579 (Tex.
App.CCorpus
Christi 1985, no writ) (holding that a juvenile knowingly, intelligently, and
voluntarily waived his right to a jury trial when he and his attorney signed a
written waiver; the trial court admonished the juvenile in the presence of his
attorney that by signing the waiver, he was giving up the right to have a jury
decide his case; and the juvenile affirmatively acknowledged that he understood
and desired to waive that right). 
Therefore, we hold that L.G. effectively waived his right to grand jury
approval.  See TEX. FAM. CODE ANN. ' 51.09.

B. 
Ineffective Assistance of Counsel








L.G. also argues that he was denied effective
assistance of counsel when his trial counsel advised him to sign the waiver of
grand jury approval prior to the adjudication hearing because it doubled his
minimum time of incarceration and exposed him to a potential transfer to the
adult prison system.

In order to prove the first prong, L.G. must show
that his trial counsel=s representation fell below the
standard of prevailing professional norms. 
See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Salinas,
163 S.W.3d at 740. A strong presumption of reasonable professional assistance
exists, and Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Thompson, 9 S.W.3d at 814.  Ineffective assistance of counsel claims are
rarely successful on direct appeal because of the undeveloped record.  Id. at 813B14.








When an appellant raises an ineffective
assistance of counsel claim based on erroneous advice from his counsel, he must
show that his decision was based on his attorney=s advice
and that, but for his attorney=s
advice, he would have made a different decision.  State v. Recer, 815 S.W.2d 730, 731B32 (Tex.
Crim. App. 1991).  The record does not
show whether L.G. waived grand jury approval because of counsel=s
advice, or whether he waived it against his counsel=s
advice.  Therefore, we conclude that L.G.=s trial
counsel did not provide ineffective assistance by advising L.G. to waive grand
jury approval.  See id. at 732
(declining to find that counsel=s advice
was ineffective assistance of counsel when the record did not reflect whether
appellant waived a jury trial solely because of counsel=s
advice); Flanagan v. State, 675 S.W.2d 734, 747 (Tex. Crim. App. 1984)
(declining to find ineffective assistance of counsel based on counsel=s advice
because A[a]lthough
the record reflects that appellant waived his right to a jury trial, nothing in
the record reflects whether this waiver was made on counsel=s
suggestion or at appellant=s
insistence@).








Moreover, even if we assume that L.G. waived his
right solely based on his counsel=s
advice, the record does not reflect, nor does L.G. allege, that he was
misinformed of the consequences of waiving his right to the grand jury.  The trial court clearly explained that
waiving grand jury approval exposed L.G. to an increased sentence, and L.G.
stated that he understood his right and the consequences of waiving it.  While L.G. alleges that his counsel took no
action to ensure that L.G. understood the consequences of the waiver, there is
no evidence in the record that counsel did not so inform him.  In fact, L.G. did not disagree when the trial
court stated, A[Y]ou and your attorney have
discussed this matter.@ 
Therefore, because the trial court correctly informed L.G. of the
consequences of the waiver, because L.G. indicated that his counsel had
discussed the waiver with him, and because nothing in the record shows that counsel
misinformed L.G. of the consequences of the waiver, we cannot say that he was
denied effective assistance of counsel.  See
Riplowski v. State, 61 S.W.3d 378, 391 (Tex. Crim. App. 2001) (holding
that counsel=s advice is not ineffective
assistance of counsel when A[a]ppellant
received exactly what counsel told him he would get@), cert.
denied, 539 U.S. 916 (2003); Thacker v. State, 999 S.W.2d 56, 69
(Tex. App.CHouston [14th Dist.] 1999, pet.
ref=d)
(holding that trial counsel=s advice
to waive a right is not ineffective assistance of counsel when the appellant
presents no evidence that the waiver is involuntary or that the trial counsel
did not advise him of the consequences of the waiver).

This case demonstrates the difficulties inherent
in evaluating ineffective assistance claims on direct appeal because the record
does not show the circumstances or reasons behind the waiver, nor does it Aaffirmatively
demonstrate the alleged ineffectiveness.@  See Thompson, 9 S.W.3d at 814.  Therefore L.G. cannot present evidence that
his trial counsel=s actions were deficient to
defeat the presumption of reasonable professional assistance.  See id.

Because nothing in the record shows that L.G.=s trial
counsel=s
conduct was unreasonable or fell below the standard of prevailing professional
norms, we overrule L.G.=s sole point.  See Strickland, 466 U.S. at 694, 104 S.
Ct. at 2052.








                                          V.  Conclusion

Having overruled L.G.=s sole
point, we affirm the judgment of the trial court.

PER
CURIAM

 

PANEL:  MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

 

DELIVERED: August 28,
2008











[1]See Tex. R. App. P. 47.4.





[2]L.G. was accused of
committing two counts of aggravated assault, a second degree felony.  See TEX. PENAL CODE ANN. ' 22.02 (Vernon Supp. 2008).





[3]Under the determinate
sentencing framework, the juvenile court may commit the juvenile to the custody
of the Texas Youth Commission (ATYC@) with the possibility of a later transfer to
prison.  TEX. FAM. CODE ANN. ' 54.04(d)(3) (Vernon Supp. 2008).





[4]When a juvenile court
imposes an indeterminate sentence, it may only commit the child to the custody
of TYC, and TYC must release the child no later than his nineteenth
birthday.  TEX. FAM. CODE ANN. ' 54.04(d)(2); TEX. HUM. RES. CODE ANN. ' 61.084(e) (Vernon Supp.
2008).  When the trial court imposes an
indeterminate sentence for a child who committed aggravated assault, the term
of confinement in a TYC residential facility ranges from twelve months to the
child=s nineteenth
birthday.  TEX. HUM. RES. CODE ANN. ' 61.084(e); 37 TEX. ADMIN. CODE ' 85.23(d)(3) (2006) (Tex.
Youth Comm=n, Classification); 37 TEX. ADMIN. CODE ' 85.25(d)(3) (2005) (Tex.
Youth Comm=n, Classification,
Minimum Length of Stay).





[5]A child who receives a
determinate sentence is committed to TYC=s custody initially.  See TEX. FAM. CODE ANN. ' 54.04(d)(3); TEX. HUM. RES. CODE ANN. ' 61.079 (Vernon Supp. 2008).  Between the child=s sixteenth and
nineteenth birthdays, at TYC=s request the trial court may hold a hearing to
determine if the juvenile should be transferred to TDCJ or remain in the
custody of TYC.  TEX. FAM. CODE ANN. ' 54.11(i); TEX. HUM. RES. CODE ANN. ' 61.079(a).  If a court has not already transferred the
juvenile, TYC must transfer anyone in its custody who has not completed his
sentence to TDCJ on his nineteenth birthday, and must release anyone in its
custody who has completed his sentence. 
TEX. HUM. RES. CODE ANN. ' 61.084(b), (e).

 

The following
steps must usually be taken in order for a court to impose a determinate
sentence: (1) the State=s petition must allege
that the juvenile committed one of the crimes enumerated in section 53.045(a);
(2) the State must refer the petition to the grand jury; (3) the grand jury
must approve the petition by a vote of at least nine jurors; (4) the approval
by the grand jury must be certified to the court; and (5) the certification
must be entered in the record.  TEX. FAM. CODE ANN. '' 53.045, 54.04(d)(3); In
re S.J., 977 S.W.2d 147, 149 (Tex. App.CSan Antonio 1998, no pet.).





[6]See also William B. Connolly, ASame Difference@BDeterminate Sentencing, in STATE BAR OF TEX. JUV. L. SEC., NUTS AND BOLTS OF JUVENILE LAW, 8 (Aug. 2005) (stating
that the Ajuvenile and counsel can
waive presentation and grand jury approval of the petition@), available at
http://www.juvenilelaw.org/Articles/2005/NB/Connolly.pdf; Hon. Jean Boyd, Certification
v. Determine Sentence, in STATE BAR OF TEX. JUV. L. SEC., 16TH ANNUAL JUV. LAW CONF., 6 (Feb. 2003) (stating that Athe juvenile may waive
his right to grand jury approval so long as the formal requirements of Family
code 51.09 are met@), available at
http://www.juvenilelaw.org/Articles/2003/CertificationDeterminateSentence.pdf.