

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-418-CV

IN THE MATTER OF L.G.

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

Appellant L.G., a juvenile, appeals his determinate sentence of four years after the trial court adjudicated him delinquent.  In one point, L.G. argues that he was denied effective assistance of counsel when his trial counsel advised him to waive the requirement of obtaining grand jury approval of the State's petition before a determinate sentence could be imposed.  We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## II. Factual and Procedural Background

The State alleged that L.G. engaged in delinquent conduct by committing two counts of aggravated assault with a firearm. The facts underlying the charges of aggravated assault are not in dispute. L.G., who was fifteen years old at the time of the incident, had a series of confrontations with the victims, Raul Mata and Jose Conchas. On the night of October 14, 2007, immediately following a dispute with the victims, L.G. fired a shotgun several times at them. They were sitting in their vehicle in line at a drive-through restaurant. L.G. hit both Mata and Conchas in the back with "birdshot," and both victims saw L.G. discharge the shotgun several times. They were released that night from the hospital without serious injury.

L.G. was placed in detention on October 22, 2007. On October 26, the State filed a petition regarding a child engaged in delinquent conduct, alleging in two counts that L.G. "engaged in delinquent conduct in that [he] violated a penal law of this state punishable by imprisonment, to-wit: Section 22.02 of the Texas Penal Code."[2] The trial court held an adjudication hearing and a disposition hearing on November 14. Prior to these hearings, L.G., his attorney,

---

[2] L.G. was accused of committing two counts of aggravated assault, a second degree felony. *See* TEX. PENAL CODE ANN. § 22.02 (Vernon Supp. 2008).

and one of his parents signed a waiver of grand jury approval. This waiver allowed the trial court to impose a determinate sentence without the State first seeking grand jury approval.[3]

At the end of the adjudicative hearing, the trial court found that L.G. had engaged in delinquent conduct as alleged by the State's petition based on the stipulated evidence. L.G. testified at the disposition hearing that he had only one prior contact with the juvenile department, for which he received a supervisory caution for an "accident/damage under $200" in February 2006. Patsy Paxton, of Tarrant County Juvenile Services, was the officer who supervised L.G. while he was in detention. Paxton testified that L.G. was a good candidate for probation, that he would be able to successfully complete probation, that he behaved well in detention, that he attended school regularly and was passing all his classes, and that he had a good attitude. She did testify, however, that L.G. associated with some gang members but that he was not a member himself. L.G.'s father testified that this was L.G.'s first offense and that he would ensure that L.G. complied with the terms of probation.

---

[3] Under the determinate sentencing framework, the juvenile court may commit the juvenile to the custody of the Texas Youth Commission ("TYC") with the possibility of a later transfer to prison. TEX. FAM. CODE ANN. § 54.04(d)(3) (Vernon Supp. 2008).

3

L.G. testified that if the trial court placed him on probation he would comply with all terms and conditions, abide by any drug testing program, and stay away from the victims. He also testified that he had no problems at home or school and that he understood the need to complete his education.

At the conclusion of the evidence, L.G.'s attorney requested that the court accept the juvenile department's recommendation of community supervision. The State did not recommend a disposition.

The trial court committed L.G. to TYC's custody for four years, with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice ("TDCJ"). This appeal followed.

### III. Standard of Review

Juveniles are entitled to effective assistance of counsel, and such a claim should be reviewed under the *Strickland* standard. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *In re R.D.B.*, 102 S.W.3d 798, 800 (Tex. App.—Fort Worth 2003, no pet.). To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence: (1) that his counsel's representation fell below the standard of prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas v. State*, 163 S.W.3d

4

734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first *Strickland* prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must

5

affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, the appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* 104 S. Ct. at 2068. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

There is no requirement that we approach the two-pronged inquiry of *Strickland* in any particular order, or even address both components of the inquiry if the defendant makes an insufficient showing on one component. *Id.,* 104 S. Ct. at 2069.

# IV. Analysis

L.G. argues that he was denied effective assistance of counsel when his trial counsel advised him to sign the waiver of grand jury approval. He claims that the advice was an error which no reasonable attorney would make because it doubled his minimum incarceration time and exposed him to a possible transfer to the adult prison system.

When a juvenile commits a felony, the juvenile court may impose either an indeterminate sentence[4] or a determinate sentence.[5] TEX. FAM. CODE ANN.

---

[4] When a juvenile court imposes an indeterminate sentence, it may only commit the child to the custody of TYC, and TYC must release the child no later than his nineteenth birthday. TEX. FAM. CODE ANN. § 54.04(d)(2); TEX. HUM. RES. CODE ANN. § 61.084(e) (Vernon Supp. 2008). When the trial court imposes an indeterminate sentence for a child who committed aggravated assault, the term of confinement in a TYC residential facility ranges from twelve months to the child's nineteenth birthday. TEX. HUM. RES. CODE ANN. § 61.084(e); 37 TEX. ADMIN. CODE § 85.23(d)(3) (2006) (Tex. Youth Comm'n, Classification); 37 TEX. ADMIN. CODE § 85.25(d)(3) (2005) (Tex. Youth Comm'n, Classification, Minimum Length of Stay).

[5] A child who receives a determinate sentence is committed to TYC's custody initially. *See* TEX. FAM. CODE ANN. § 54.04(d)(3); TEX. HUM. RES. CODE ANN. § 61.079 (Vernon Supp. 2008). Between the child's sixteenth and nineteenth birthdays, at TYC's request the trial court may hold a hearing to determine if the juvenile should be transferred to TDCJ or remain in the custody of TYC. TEX. FAM. CODE ANN. § 54.11(i); TEX. HUM. RES. CODE ANN. § 61.079(a). If a court has not already transferred the juvenile, TYC must transfer anyone in its custody who has not completed his sentence to TDCJ on his nineteenth birthday, and must release anyone in its custody who has completed his sentence. TEX. HUM. RES. CODE ANN. § 61.084(b), (e).

§ 54.04(d)(2)–(3). If a child committed aggravated assault, under an indeterminate sentence he would spend at least one year in a TYC residential facility, but TYC would have to release him no later than his nineteenth birthday. *Id*. § 54.04(d)(2); TEX. HUM. RES. CODE ANN. § 61.084(e). That same child, under a determinate sentence, would serve a two-to-twenty-year sentence, initially at a TYC residential facility, with a possible transfer to TDCJ. TEX. FAM. CODE ANN. § 54.04(d)(3)(B); TEX. PENAL CODE ANN. § 22.02; 37 TEX. ADMIN. CODE § 85.25(c)(2)(B).

A trial court lacks the authority to impose a determinate sentence unless the State presents its petition to the grand jury, and the grand jury approves it. TEX. FAM. CODE ANN. §§ 53.045, 54.04(d)(3); *S.J.*, 977 S.W.2d at 149; *In re H.V.R.*, 974 S.W.2d 213, 215 (Tex. App.—San Antonio 1998, no pet.). If the State obtains grand jury approval in accordance with section 53.045, then the petition is deemed an indictment, allowing the juvenile to be transferred from TYC to TDCJ. *S.J.*, 977 S.W.2d at 149. However, a juvenile may waive his

---

The following steps must usually be taken in order for a court to impose a determinate sentence: (1) the State's petition must allege that the juvenile committed one of the crimes enumerated in section 53.045(a); (2) the State must refer the petition to the grand jury; (3) the grand jury must approve the petition by a vote of at least nine jurors; (4) the approval by the grand jury must be certified to the court; and (5) the certification must be entered in the record. TEX. FAM. CODE ANN. §§ 53.045, 54.04(d)(3); *In re S.J.*, 977 S.W.2d 147, 149 (Tex. App.—San Antonio 1998, no pet.).

right to grand jury approval if all statutory and constitutional requirements are satisfied. *In re A.R.A.*, 898 S.W.2d 14, 15–16 (Tex. App.—Austin 1995, no writ).[6]

The trial court found that L.G. committed two counts of aggravated assault, a second degree felony making him eligible for a determinate sentence. *See* TEX. FAM. CODE ANN. § 53.045(a)(6); TEX. PENAL CODE ANN. § 22.02. The State, for reasons not found in the record, did not present its petition to the grand jury for approval. However, L.G., his trial counsel, and one of his parents signed a waiver of grand jury approval prior to the trial, giving the trial court the power to impose a determinate sentence of four years in the custody of TYC with a possible transfer to TDCJ. *A.R.A.*, 898 S.W.2d at 15–16. L.G. argues that his trial counsel's advice to sign the waiver constituted ineffective

---

[6] *See also* William B. Connolly, *"Same Difference"–Determinate Sentencing*, *in* STATE BAR OF TEX. JUV. L. SEC., NUTS AND BOLTS OF JUVENILE LAW, 8 (Aug. 2005) (stating that the "juvenile and counsel can waive presentation and grand jury approval of the petition"), *available at* http://www.juvenilelaw.org/Articles/2005/NB/Connolly.pdf; Hon. Jean Boyd, *Certification v. Determine Sentence*, *in* STATE BAR OF TEX. JUV. L. SEC., 16TH ANNUAL JUV. LAW CONF., 6 (Feb. 2003) (stating that "the juvenile may waive his right to grand jury approval so long as the formal requirements of Family code 51.09 are met"), *available at* http://www.juvenilelaw.org/Articles/2003/CertificationDeterminateSentence.pdf.

assistance of counsel because the waiver enabled the trial court to impose a determinate sentence when the State only sought an indeterminate sentence.

### A. Validity of the Waiver

Within the discussion of his issue, L.G. challenges the validity of the waiver by asserting that he did not understand the consequences of waiving grand jury approval. A juvenile may waive the requirement of presentation to the grand jury if:

(1) the waiver is made by the child and the attorney for the child;

(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;

(3) the waiver is voluntary; and

(4) the waiver is made in writing or in court proceedings that are recorded.

TEX. FAM. CODE ANN. § 51.09 (Vernon 2002); *A.R.A.*, 898 S.W.2d at 16.

L.G. concedes that he, his attorney, and one of his parents signed the waiver and that the trial court acknowledged the signed waiver in open court. By signing the document, he acknowledged that he was "informed of and underst[ood his] right to have this matter presented to the Grand Jury," and that he "waive[d] the right to have the Grand Jury approve the Petition and respectfully request[ed] and consent[ed] that the trial proceed upon the Petition

10

as filed and to accept a Determinate Sentence waiving the requirement of Grand Jury Approval."

L.G. argues that the waiver he signed does not adequately explain the "intricacies of the determinate sentencing statute." Texas law requires that the child and attorney are "informed of and understand the right and the possible consequences of waiving" that right. TEX. FAM. CODE ANN. § 51.09(2). There is no showing in the record that L.G. did not understand the possible consequences of waiving his right to grand jury approval.

L.G. further argues that the trial court's admonishment at the beginning of the adjudication hearing did not expand his knowledge. The trial court explained the right of grand jury approval and the consequences of waiving that right in the following exchange:

> THE COURT: Now, the Court makes note that you have signed and your attorney has signed and also your parents a waiver of grand jury approval?
>
> [APPELLANT:] Yes, ma'am.
>
> THE COURT: These are second-degree felonies; is that correct?
>
> [THE STATE:] That's correct, Your Honor.
>
> THE COURT: Now, [L.G.], what that means is the State in this case has a right to take this petition to the grand jury and seek grand jury approval. And if the grand jury gives the State approval in this

11

case, then the possible sentence would be increased with this law violation if you were found to have violated this law.

It's my understanding that the district attorney has not gone before the grand jury to seek approval, but you and your attorney have discussed this matter and you've each signed this paper saying that you would like to give up your right to have the grand jury approve your petition and that, instead, you'd like to agree that this Court should consider your petition as if it's been approved by the grand jury, which would increase the sentencing possibilities in this case since this is a second-degree felony up to a possibility of a 20-year sentence.

Do you understand that?

[APPELLANT:] Yes, ma'am.

From this exchange, L.G. knew that the State was required to obtain grand jury approval of its petition before the court could impose an increased sentence of up to twenty years and that the waiver relieved the State from its burden of obtaining grand jury approval. The trial court informed L.G. that he faced a greater sentence if the grand jury approved the petition or if he waived that requirement than he would without the grand jury approval or waiver. L.G. indicated that he and his trial counsel had discussed the waiver and that he understood the court's admonishment.

We hold that L.G. and his attorney were informed of and understood the right of grand jury approval and the possible consequences of waiving that right because L.G. and his attorney signed the waiver stating that they were

12

informed of and understood the right; the trial court clearly informed L.G. in the presence of his attorney of his right; the trial court informed L.G. that he faced an increased sentence of up to twenty years if he waived this right; and L.G. told the trial court that he understood the admonishment. *See In re B.J.*, 960 S.W.2d 216, 220 (Tex. App.—San Antonio 1997, no pet.) (holding that the court's admonishment was ineffective and that the juvenile's plea of true was invalid when the court's admonishment failed to inform the juvenile that, by pleading true, he faced a sentence of up to forty years); *In re R.W.*, 694 S.W.2d 578, 579 (Tex. App.—Corpus Christi 1985, no writ) (holding that a juvenile knowingly, intelligently, and voluntarily waived his right to a jury trial when he and his attorney signed a written waiver; the trial court admonished the juvenile in the presence of his attorney that by signing the waiver, he was giving up the right to have a jury decide his case; and the juvenile affirmatively acknowledged that he understood and desired to waive that right). Therefore, we hold that L.G. effectively waived his right to grand jury approval. *See* TEX. FAM. CODE ANN. § 51.09.

## B. Ineffective Assistance of Counsel

L.G. also argues that he was denied effective assistance of counsel when his trial counsel advised him to sign the waiver of grand jury approval prior to

13

the adjudication hearing because it doubled his minimum time of incarceration and exposed him to a potential transfer to the adult prison system.

In order to prove the first prong, L.G. must show that his trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas*, 163 S.W.3d at 740. A strong presumption of reasonable professional assistance exists, and "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814. Ineffective assistance of counsel claims are rarely successful on direct appeal because of the undeveloped record. *Id.* at 813–14.

When an appellant raises an ineffective assistance of counsel claim based on erroneous advice from his counsel, he must show that his decision was based on his attorney's advice and that, but for his attorney's advice, he would have made a different decision. *State v. Recer*, 815 S.W.2d 730, 731–32 (Tex. Crim. App. 1991). The record does not show whether L.G. waived grand jury approval because of counsel's advice, or whether he waived it against his counsel's advice. Therefore, we conclude that L.G.'s trial counsel did not provide ineffective assistance by advising L.G. to waive grand jury approval. *See id.* at 732 (declining to find that counsel's advice was ineffective assistance of counsel when the record did not reflect whether appellant waived

14

a jury trial solely because of counsel's advice); *Flanagan v. State*, 675 S.W.2d 734, 747 (Tex. Crim. App. 1984) (declining to find ineffective assistance of counsel based on counsel's advice because "[a]lthough the record reflects that appellant waived his right to a jury trial, nothing in the record reflects whether this waiver was made on counsel's suggestion or at appellant's insistence").

Moreover, even if we assume that L.G. waived his right solely based on his counsel's advice, the record does not reflect, nor does L.G. allege, that he was misinformed of the consequences of waiving his right to the grand jury. The trial court clearly explained that waiving grand jury approval exposed L.G. to an increased sentence, and L.G. stated that he understood his right and the consequences of waiving it. While L.G. alleges that his counsel took no action to ensure that L.G. understood the consequences of the waiver, there is no evidence in the record that counsel did not so inform him. In fact, L.G. did not disagree when the trial court stated, "[Y]ou and your attorney have discussed this matter." Therefore, because the trial court correctly informed L.G. of the consequences of the waiver, because L.G. indicated that his counsel had discussed the waiver with him, and because nothing in the record shows that counsel misinformed L.G. of the consequences of the waiver, we cannot say that he was denied effective assistance of counsel. *See Riplowski v. State*, 61 S.W.3d 378, 391 (Tex. Crim. App. 2001) (holding that counsel's advice is not

15

ineffective assistance of counsel when "[a]ppellant received exactly what counsel told him he would get"), *cert. denied*, 539 U.S. 916 (2003); *Thacker v. State*, 999 S.W.2d 56, 69 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (holding that trial counsel's advice to waive a right is not ineffective assistance of counsel when the appellant presents no evidence that the waiver is involuntary or that the trial counsel did not advise him of the consequences of the waiver).

This case demonstrates the difficulties inherent in evaluating ineffective assistance claims on direct appeal because the record does not show the circumstances or reasons behind the waiver, nor does it "affirmatively demonstrate the alleged ineffectiveness." *See Thompson*, 9 S.W.3d at 814. Therefore L.G. cannot present evidence that his trial counsel's actions were deficient to defeat the presumption of reasonable professional assistance. *See id*.

Because nothing in the record shows that L.G.'s trial counsel's conduct was unreasonable or fell below the standard of prevailing professional norms, we overrule L.G.'s sole point. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2052.

16

### V. Conclusion

Having overruled L.G.'s sole point, we affirm the judgment of the trial court.

PER CURIAM

PANEL:  MCCOY, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED: August 28, 2008